353 So.2d 1013 (1977)
STATE of Louisiana, Appellee,
v.
Lee UNDERWOOD, Appellant.
No. 60243.
Supreme Court of Louisiana.
December 19, 1977.
Rehearing Denied January 27, 1978.
*1014 Paul H. Kidd, Monroe, George M. Strickler, Jr., New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Johnny C. Parkerson, Dist. Atty., Brian E. Crawford, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant was convicted of three counts of distribution of marijuana. La. R.S. 40:966. He was sentenced to consecutive sentences totaling twenty-five years (out of a maximum imposable of ten years for each count).
Under well-settled provisions and principles, we find no merit to the four contentions attacking the validity of the conviction itself.[1] However, we do find merit to *1015 defendant's contention attacking the imposition of his sentence, alleged to be excessive, insofar as based upon a pre-sentence investigation containing grossly false and prejudicial information.

(1)
The three-count information charges the accused with distributions (sales) of marijuana on December 4, 1975, January 5, 1976, and January 25, 1976. The substance of the charge is that the defendant sold to undercover agent Weems marijuana on these three occasions during this two-month period in the following quantities: 10 lids at $70.00 (December 4), 20 lids at $140 (January 5), and 53 pounds (according to the trial court's per curiam, with no price shown by the record) (January 25). After the sales, pursuant to search warrant, three large cellophane trash bags containing marijuana were seized at the defendant's residence.
After the defendant was convicted, the court stated that it did not order a pre-sentence investigation. See minute entry of February 10, 1977. At the time of sentencing a week later, the court imposed consecutive sentences totaling 25 years on the three counts; it also fixed the accused's bail pending appeal at $100,000 on each count, for a total of $300,000. See minute entry of February 18, 1977. (The bail was subsequently reduced to $175,000. See minute entry of June 21, 1977.)
No objection to the sentence as excessive was made at that time. Under the jurisprudence of this court, therefore, the alleged individual excessiveness of the sentence is not reviewable at this time in the accused's appeal from his convictions. State v. Williams, 340 So.2d 1382 (La.1976). Further, since the trial court indicated it did not intend to rely upon a pre-sentence investigation, there is no issue, for purposes of this appeal, relating to a waiver by the accused of an opportunity to counter unfavorable information in a pre-sentence report through his failure to request it prior to or at the time of sentencing. See State v. Norris, 347 So.2d 225 (La.1977).

(2)
Subsequent to the appeal, but before the record was lodged here, the defendant applied to this court for relief, based upon the following allegations:
He was a lifelong resident of the parish without previous criminal record. The exceptionally heavy sentence imposed led him to believe that it must be based upon prejudicial and inaccurate information in a pre-sentence report. After the sentence, his attorney requested of the sentencing judge an opportunity to review any pre-sentence report. The judge informed him that, while he had no objection, the report (with information as to other criminal activity) had been returned to the parole and probation department.
On these allegations, we granted relief. 345 So.2d 904 (La.1977): We granted a limited remand "for consideration by the trial judge of relator's request for presentence report data in light of La.C.Cr.P. art. 877 and R.S. 15:574.12." We did so, for the following reasons:
The procedure which leads to the imposition of a sentence must satisfy the requirements of federal due process, even if the accused has no federal right to object to a particular result of the sentencing process. Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). Thus, where, in imposing a heavy sentence, the trial court relies upon pre-sentence information which is materially false or which furnishes invalid premises for the sentence, the defendant must be given an opportunity to rebut such substantially-significant misinformation. United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); United States v. Espinoza, 481 F.2d 553 (CA 5, 1973). See also: Coffee, The Future of Sentence Reform: Emerging Legal Issues in the Individualization of Justice, 73 Mich. L.Rev. 1362, 1420-40 (1975); Note, Criminal *1016 ProcedureAccuracy of Pre-sentence Reports, 22 Wayne L.Rev. 899 (1976).
Tucker and Espinoza, by so ordering, indicate that the proper remedy for a sentence imposed on the basis of substantially false or improper premises is to set the sentence aside. Thereafter, the sentencing judge is to exercise his discretion in re-sentencing in the light of the remaining pertinent considerations.

(3)
At the hearing conducted in accordance with our remand order, at the trial court's request the defendant specified the pre-sentence report data requested as: (1) the presentence report to be made available to the defendant's attorney, in order that he might rebut any untruthful prejudicial information which may have influenced the sentencing judge; (2) the reports concerning alleged criminal activities of the defendant, which the trial court admitted receiving (although denying he was influenced in his sentence by them); (3) the source of the information accusing the defendant of other criminal activity than presently charged with; and (4) that this information be furnished to counsel in a confidential matter, with it to be sealed and transmitted with the record for purposes of appellate review by this court.
At the non-evidentiary hearing conducted on the motion, the trial court admitted that a pre-sentence report examined by him stated: "According to information received the defendant was rumored to be probably the largest distributor of marijuana apprehended in this area. He was rumored to be bringing it in in large quantities and at times using at least one of the employees that worked for him in his construction business."
The court further stated that it had placed absolutely no credence in this report, as third-hand hearsay initially stemming from an individual with obvious self-interest. The report did not indicate the source of this information. Upon investigation (at a time not indicated by the court), the trial court discovered that the report was based on third-hand information; the initial information had been furnished by a former employee of the defendant attempting to make a plea bargain on an unrelated criminal charge, which was then picked up and repeated and reiterated as unevaluated anonymous "intelligence" in Strike Force and other law enforcement records.
According to the trial judge, the pre-sentence report otherwise indicates that the defendant is an individual of no previous juvenile or criminal record, with stable family relationships (wife, sons, daughter, father and mother, and brother) and of good community and business and employment reputation and record. The pre-sentence report further contains a statement by the defendant admitting his serious criminal conduct, indicating that he did not realize the seriousness of the marijuana offenses or the penalties. From the judge's summary of the contents of the report, it is indicated that there is no substantial likelihood of future criminal violation on the part of the defendant.
Having summarized the contents of the report, the trial judge denied any other relief requested.
The trial court stated, and its per curiam on the issue amplifies, that the heaviness of the sentence was based on the commercial sale of marijuana in quantity (the third time), and that consecutive sentences were imposed because three offenses were involved. While admitting that it had examined the pre-sentence report, the trial court reiterated that the sentences imposed were based solely upon the evidence at the trial of innocence or guiltnot at all upon information contained in the pre-sentence report.
At the close of the hearing, the trial court denied (1) access of counsel to the pre-sentence report, even on a confidential basis (Assignment 13), (2) a motion to seal a xeroxed copy of the report for inclusion in the record and review by this court (Assignment 14), and (3) information to counsel as to the probation officer who prepared the report and as to the source of the adverse *1017 information, together with an evidentiary hearing by which the defendant could rebut such adverse information (Assignment 15). The chief basis of these denials was the trial court's doubt as to its authority to grant them.
Additionally, the trial court denied without a hearing a motion to reduce and/or vacate sentences as based on consideration of improper data, at which hearing the defendant sought permission to produce evidence to show that the present sentences and bail were by far the heaviest ever imposed for similar offenses. (Assignment 17.) The trial court denied this motion, being of the opinion it had no jurisdiction to consider it since the case was on appeal.

(4)
In our opinion, for reasons to be elaborated, the trial court erred (under the circumstances shown) in failing to afford defendant counsel's access to the pre-sentence report and an opportunity to rebut any adverse information therein contained.[2]
In the first place, the pre-sentence report is shown to be materially and prejudicially false. It indicated extensive criminal activity by the accused as the largest marijuana distributor in the area, whereas it is conceded the report was unevaluated third-hand hearsay based initially upon a tip by a person who sought profit by furnishing such false information. Without derogating from the seriousness of the defendant's present offensesthe selling of marijuana in quantity commercially over a two-month period, the criminal activity charged does not by itself indicate an extensive and settled course of criminal behavior over months or years, such as is implied by the present report.
In the second place, while La.C.Cr.P. art. 877 (1966) authorizes the court in its discretion to inform defense counsel of factual contents and conclusions of such a report (providing the sources of "confidential" information not be disclosed), the 1975 amendments to La.R.S. 574.12 indicate that upon proper showing (as here) the accused has a right to subpoena such records, with the court (after an in camera examination) to withhold only information which is not relevant or which is protected by confidentiality.[3]
The federal jurisprudence earlier noted has held that due process requires an opportunity to rebut false or invalid data of a substantial nature, to which the sentencing judge was exposed, where there is a reasonable probability that it may have contributed to the harshness of the sentence.
Here, a revealed portion of the report contained unevaluated third-hand anonymous *1018 information of a grossly prejudicial nature, conceded for present purposes to be false. On this showing, the defendant's attorney should be entitled under confidential conditions to examine the remainder of the report, subject to such excepting or deleting of source as is required to comply with La.R.S. 15:574.12 F (see footnote 3 above). "Fundamental fairness to the defendant requires that the substance of all derogatory information which adversely affects his interests and which has not otherwise been disclosed in open court should be called to the attention of the defendant, his attorney, and others who are acting on his behalf." American Bar Association Standards Relating to the Administration of Criminal Justice, Standards Relating to Sentencing Standards and Alternatives, Standard 4.4(a) (1968).[4] He should, of course, also be entitled to rebut as false any derogatory information in the report.

(5)
We likewise conclude that, under federal due process jurisprudence summarized above at (2) in this opinion, the defendant is entitled to have the three consecutive sentences set aside and the case remanded for re-sentencing in the light of valid considerations. We so conclude on the basis of the grossly prejudicial third-hand information of extensive criminal activity contained in the pre-sentence report, conceded false for present purposes, and also of the reasonable probability that such false information contributed to the unusual severity of the sentence imposed.
It is true that the able and conscientious trial judge in undoubted sincerity stated, at the hearing held four months after the sentencing, that he was not consciously influenced by the false pre-sentence data in imposing the heavy sentence. The difficulty of reconstructing and remembering reasons for a sentence months after the event is no doubt one reason the legislature recently enacted Act 635 of 1977, listing criteria for imprisonment versus suspension or probation, and requiring a contemporaneous statement for the record of the reasons and factual basis of a sentence of imprisonment. La.C.Cr.P. art. 894.1 C (1977).[5]
Despite the trial judge's present sincere recollection of an event that occurred four months earlier, in the midst of his heavy *1019 and multitudinous docket, the record as a whole indicates a reasonable probability that his sentencing discretion was at least unconsciously influenced by the gross misinformation of constitutionally prejudicial magnitude contained in the pre-sentence report he referred to prior to sentencing, since the consecutive sentences totaling twenty-five years appear on their face to be excessive, absent some further explanation not found in the record.
Here, the defendant, a businessman of settled family without previous criminal record, was convicted of selling marijuana to the same undercover agent on three occasions over a two-month period. The three offenses were joined in a single indictment and consolidated for trial. By almost any objective standard or accepted principle of sentencing, the consecutive sentences totaling twenty-five years are excessive, as all studies cited below show.
Based on American theory and practice, concurrent rather than consecutive sentences are the usual rule, at least for a defendant without previous criminal record and in the absence of a showing that the public safety requires a longer sentence. Except for an offender who has been convicted prior to the present offenses, the concurrent sentences should normally not exceed the maximum for the most serious offense tried.[6] The national studies additionally indicate a usual range of sentence for a nondangerous first offender convicted of a nondangerous offense as not exceeding from five to ten years as a maximum, in the absence of exceptional circumstances (e. g., extended criminal activity which has nevertheless not heretofore resulted in a conviction).
See authorities cited in footnote 5 above, as follows: ABA Standards Relating to Sentencing Alternatives, etc., Standard 3.4; NACJSG Corrections Standards 5.2, 5.6; ALI Model Penal Code, Sections 6.06, 7.06; NCCD Model Sentencing Act, 2d, Sections 9 and 17.

Decree
For the reasons assigned, therefore, we affirm the convictions, but we vacate the sentences and remand for re-sentencing consistent with the procedures set forth by us above.
CONVICTION AFFIRMED; SENTENCE VACATED, AND REMANDED FOR RE-SENTENCING.
NOTES
[1] Appendix "A" to this opinion summarizes the contentions rejected. The appendix is filed in the court records with the formal court opinion, but it is not published as part of the opinion.
[2] Having failed to afford such relief, the trial court nevertheless felt it had no authority to disclose more specific information, such as the name of the probation officers making the report, nor to enclose for purposes of appellate review a sealed and paraphed copy of the presentence report it examined in camera. While we do not reach consideration of these issues, we note only that we find no prohibition which bars the trial court from affording a defendant an opportunity to determine whether false information influenced its sentence in violation of constitutional due process, or from affording a defendant effective appellate review of the issue involved, cf. Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977).
[3] La.R.S. 15:574.12 F provides:

"Whenever records covered by this Section are subpoenaed, the records shall be submitted to the appropriate court for a ruling as to whether the information should be turned over to the party who caused the subpoena to be issued. The court shall make this determination in camera. Should the court find:
(1) That the information is not relevant to the proceedings, or
(2) That the information was derived from communications which were obviously made in the confidence that they would not be disclosed, or
(3) That confidentiality is essential to future useful relations between the source and the recorder of the information, the information shall be withheld."
The statute does not prohibit such access under R.S. 15:574.12 F to the defendant himself. We are re-enforced in this view, because the statute affords access to the pre-sentence report for a wide variety of individuals, including the district attorney and law enforcement personnel (without court authorization), La. R.S. 15:574.12 B (1975), social service agencies or approved researchers, 15:574.12 D, and rehabilitation agencies or individuals, public or private, 15:574.12 E.
[4] Standard 4.4(b) continues:

"This principle should be implemented by requiring that the sentencing court permit the defendant's attorney, or the defendant himself if he has no attorney, to inspect the report. The prosecution should also be shown the report if it is shown to the defense. In extraordinary cases, the court should be permitted to except from disclosure parts of the report which are not relevant to a proper sentence, diagnostic opinion which might seriously disrupt a program of rehabilitation, or sources of information which has been obtained on a promise of confidentiality. In all cases where parts of the report are not disclosed under such authority, the court should be required to state for the record the reasons for its action and to inform the defendant and his attorney that information has not been disclosed. The action of the court in excepting information from disclosure should be subject to appellate review."
See also: Note, Recent Developments in the Confidentiality of Pre-Sentence Reports, 40 Albany L.Rev. 619 (1976); Note, Proposed Changes in Pre-sentence Report Procedures, 66 Journal of Criminal Law and Criminology 56 (1975); Note, Disclosure of Pre-sentence Reports in Federal Court: Due Process and Judicial Discretion, 26 Hastings L.J. 1527 (1975).
[5] All present major proposals for reform of the criminal justice system recommend that, prior to felony-imprisonment sentencing, there be a disposition hearing at which a record is made of the factual basis for the sentence, with a right of the defendant to controvert false information. Uniform Rules of Criminal Procedure, Rule 613 (Nat. Conf. Com. Uniform State Laws, 1974); National Advisory Commission on Criminal Justice Standards and Goals, Corrections Standard 5.17 (1973); National Council on Crime and Delinquency, Model Sentencing Act, 2d ed., Sections 4, 10, 18 Crime and Delinquency 335, 347, 363 (1972); ABA Standards Relating to Sentencing Alternatives and Procedures, Standard 5.5 (1968); American Law Institute Model Penal Code, Section 7.07(5) (1962).

While La.C.Cr.P. art. 894.1 (1977) does not require it, such a hearing complements the purposes of this enactment. No statute or rule of this court requires such a hearing, but a trial court is authorized to provide one. La.C.Cr.P. art. 3. Had such a hearing been here held, much of the difficulties involved in deciding the issues raised by the present appeal may well have been avoided.
[6] By a 1975 amendment, our legislature permitted joinder and trial of two or more offenses by the same indictment, contrary to our former practice and theory. La.C.Cr.P. art. 493 (1975). One of the justifications advanced for this "federal" rule of liberal joinder is that, thereby, the defendant will receive a greater opportunity to receive concurrent rather than consecutive sentences. ABA Standards Relating to Joinder and Severance, Standard 1.1 (1968) Commentary 1.1(a) (1968); Note, 74 Yale L.J. 443, 555 (1965).