360 So.2d 822 (1978)
STATE of Louisiana
v.
Rudy "Chico" BERAIN.
No. 61300.
Supreme Court of Louisiana.
June 19, 1978.
Rehearing Denied July 26, 1978.
*825 Walton J. Barnes, II, Barnes & Barnes, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Robert H. Hester, Marilyn C. Castle, Asst. Dist. Attys., for plaintiff-appellee.
SANDERS, Chief Justice.
The Grand Jury of East Baton Rouge Parish indicted Rudy Berain for the armed robbery of Thomas Warren, a violation of LSA-R.S. 14:64. The jury returned a verdict of guilty as charged, and the court sentenced him to serve seventy-five years in the custody of the Louisiana Department of Corrections.
On appeal, defendant relies upon nine assignments of error for reversal of his conviction and sentence.
The armed robbery occurred in the following factual context: Marsha Bannister worked as a confidential drug informer for the narcotics division of the Louisiana State Police. Her superiors told her to "concentrate" on the defendant's and one Randy Favron's drug dealings. She, therefore, became acquainted with them.
One afternoon, defendant called Marsha and asked her to come to his apartment. She testified that, while there, they smoked one marijuana cigarette and drank some beer. Defendant testified that he took some pills, drank some rubbing alcohol, and sniffed lighter fluid. The defendant asked Marsha if she could help him with some financial difficulties. When she said that she could not, the defendant remarked that he would have to find other means. He then showed her a knife, a lead pipe, and some gloves. He then announced that he intended to rob a cab driver. After telling her that cab drivers usually did not carry a great deal of money until the end of the night, he suggested that they ride around town to find a suitable victim.
They failed to find a good prospect at any of several bars they checked out. The defendant then suggested that they return to his apartment to get the weapons for the robbery. En route, they saw a security guard with a gun. The defendant wanted to steal his gun to use in the robbery. Marsha discouraged him, arguing that using a gun would be too noisy.
Back at his apartment, Marsha talked him out of using a knife in the proposed robbery because it would be too bloody. He then decided to cut a rope he had and use it as a garrot.
He directed Randy and Marsha to drive him to the Alibi Lounge and drop him off and then to go to a public telephone booth and call a cab for him. Randy and Marsha complied. After Randy called the cab, they watched the cab pick up defendant. They followed the cab for several minutes, then went to the home of one of Randy's friends. There, they sat on the hood of the car and waited for defendant.
When defendant entered the cab, he told the driver to drive him to a certain area. The defendant directed him to a specific *826 house and pretended to reach in his pocket for money. Instead, he pulled his rope out, put it around the driver's neck, and jerked it twice. The driver fell unconscious. The defendant then took his watch and a wallet containing seven dollars. The defendant drove the cab past Randy and Marsha. Then, he got out and put the driver's foot on the accelerator, and put the car in gear. The cab traveled down the street and hit a utility pole. The cab driver was seriously injured and required two-months' hospitalization.
Defendant returned to Randy and Marsha. He admitted his crime. On the way back to Marsha's apartment, Randy used the seven dollars to buy three packages of cigarettes. The defendant wanted to throw the wallet and watch in the river, but Marsha told him that she had a good place to dispose of them. She subsequently turned them over to the police.
At trial, the defendant admitted robbing the cab driver. His defenses were entrapment and intoxication.

ASSIGNMENT OF ERROR NO. 1
The State filed a "Notice of Intent to Introduce Evidence of Extraneous Criminal Activity." The notice outlined the following evidence which the State intended to introduce:
"The testimony with regard to the use and distribution or attempted distribution of marijuana is to be offered solely because it is so inextricably intertwined with crucial state evidence concerning the conspiracy to commit the armed robbery for which they are charged, that to delete reference to this activity would cause confusion and would mislead the jury.
"The evidence with regard to the planning of a robbery and the searching out of the intended victim is relevant as admissible because it was part of a continuous conspiracy which culminated in the commission of the armed robbery for which the defendant [is] charged. In addition, these acts are relevant to show the defendant's specific intent to commit a theft which is a necessary element of the crime of armed robbery."
Defendant filed an opposition, alleging that the acts are inadmissible because they are dissimilar, because they are irrelevant, and because they are prejudicial.
At a hearing, the State declared that it would not introduce evidence of crimes concerning marijuana, as stated in its notice of intent. Rather, there would be some evidence to indicate that the defendant was "perhaps engaged in some kind of illicit activity because one of [the State's] witnesses is an undercover agent for the narcotics bureau." [Vol. 1, p. 6b.] The court ruled that the evidence outlined in the notice was admissible to show intent.
The defendant now complains of this ruling and the subsequent admission of the evidence.
As promised at the hearing, the State only introduced general evidence that the undercover agent, Marsha, was with the defendant because of her investigating some narcotic activity. The State introduced nothing further. For example, when the State questioned Marsha about their actions on the night of the robbery, the prosecutor did not question her about smoking marijuana. The first mention of smoking marijuana was on Randy's cross-examination by the defense. Moreover, the defense relied on intoxication through drugs, rubbing alcohol, beer, and lighter fluid as a defense to negate specific intent. It was the defendant's own testimony that brought out the detailed facts of his involvement with drugs and Marsha's acquaintance with him for the purpose of obtaining information about drugs. [Vol. 3, pp. 250 et seq.]
Defendant has no valid complaint concerning the introduction of this evidence. The State introduced only evidence necessary to explain Marsha's presence at the defendant's. At the hearing, the State informed the defense of this. If this evidence was erroneously admitted, such error would be harmless since the defendant admitted having a drug problem. LSA-C.Cr.P. art. 921.
*827 The second paragraph of the notice involved evidence leading up to the crime, e. g., the defendant's announcing that he intended to rob someone because he needed money; his subsequent searching for a victim; and the events surrounding the calling of the cab.
This evidence is not evidence of other crimes as the defendant argues. Rather, it is evidence of the planning and commission of the crime charged. Hence, it was properly admitted.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant challenges the court's ruling which allowed a photograph of the rope burns on the victim's neck into evidence. He alleges two grounds: (1) that the evidence was not within the State's opening statement; and (2) that the photograph was highly prejudicial.
Article 766 of the Louisiana Code of Criminal Procedure provides:
"The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge." [Emphasis supplied.]
Article 769 of the Louisiana Code of Criminal Procedure provides in pertinent part:
"Evidence not fairly within the scope of the opening statement of the state shall not be admitted in evidence."
It is unnecessary for the State to detail every shred of evidence in an opening statement; it is sufficient for the State to give a general description of the evidence to be introduced. State v. Frazier, La., 283 So.2d 261 (1973). The photograph of the victim's rope burns "falls within the general description of intended proof." State v. Foy, La., 278 So.2d 38 (1973). In the present case, not only did the prosecutor state that he would introduce photographs, but also he described the content of the photograph:
"I tell you the physical evidence will be the watch, the wallet, the rope, photographs and any other evidence deemed relevant in this matter.
"* * *
"The next thing the cab driver knows there's a piece of rope around his neck. You see [the defendant] is sitting behind him. And [he] starts squeezing that rope and squeezing that rope, until finally the man was unconscious." [Vol. 2, p. 57.]
For admission into evidence, a photograph's probative value must outweigh any prejudicial effect upon the jury, and it must be relevant to a material issue at trial. State v. Redwine, La., 337 So.2d 1041 (1976); State v. Cooper, La., 334 So.2d 211 (1976); State v. Smith, La., 327 So.2d 355 (1975).
The photograph in question was properly admitted into evidence. The defense stipulated that the defendant had robbed the victim. However, the defense refused to stipulate that it was armed robbery. The photograph was relevant to establish that the robbery was with a dangerous weapon, i. e., the rope. Moreover, the State must prove that the defendant used force or intimidation during the taking. LSA-R.S. 14:64. The victim was the sole witness. He testified that the defendant harmed him with a rope. The photograph corroborates his testimony. See, State v. Robinson, La., 353 So.2d 1001 (1977).
Assignment of Error No. 2 is without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant alleges that the trial court improperly admitted the statements he made to Marsha prior to the commission of the crime. These statements reveal his intent to commit the crime. He argues: (1) that the State's notice pursuant to Article 768 of the Louisiana Code of Criminal Procedure did not cover those statements; (2) that he was entitled to an evidentiary hearing to determine the voluntariness of the statements; (3) that he was entitled to be informed of the fact that Marsha was an *828 informer; (4) that Marsha should have advised him of his constitutional rights before taking any statements; and (5) that he was entitled to be arrested and/or prevented from the commission of the crime.
When the State asked Marsha if the defendant made any statements concerning money and she answered that he asked if she could help him out, the defense objected on the grounds set forth above.
Louisiana Code of Criminal Procedure Article 768 provides that the State must advise the defendant in writing prior to the beginning of its opening statement if it intends to introduce a confession or inculpatory statement. In State v. Brent, La., 347 So.2d 1112 (1977), we stated:
"For purposes of this article, the term `inculpatory statement' refers to defendant's out-of-court admission made after a crime has taken place which implicates defendant in its commission." [Emphasis supplied.]
The statements made to Marsha prior to the armed robbery require no Article 768 notice for they are neither confessions or inculpatory statements.
LSA-R.S. 15:451 provides that before what purports to be a confession can be introduced, the judge must be convinced that it was made freely and voluntarily. LSA-R.S. 15:449 defines "confession" as "an admission of guilt, not . . . an acknowledgment of facts merely tending to establish guilt." The statements the defendant made to Marsha about his plan to commit robbery do not constitute a confession. One cannot admit his guilt of a crime before he commits it. Thus, the defendant was not entitled to a hearing to determine the voluntariness of the statements.
His argument that he was entitled to have Marsha inform him of the fact that she was an informer for the police is without merit. To require confidential informers to alert the suspects that they are tied to the government would frustrate crime detection. As the United States Supreme Court stated in Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408,17 L.Ed.2d 374 (1966), "`[t]he risk of being . . . betrayed by an informer or deceived as to the identity of one with whom one deals is probably inherent in the conditions of human society. It is the kind of risk we necessarily assume whenever we speak.'"
The defendant's argument that Marsha should have informed him of his constitutional rights before listening to his statements has no merit. The Miranda warnings required by the United States Supreme Court do not come into play until the accused is subject to custodial interrogation. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Here, Marsha did not restrain the defendant's freedom nor did she place him in custody. The defendant made the statements during a non-custodial conversation. Thus, he had no right to be informed of his constitutional rights.
His final contention that he should have been arrested or, at least, prevented from the commission of the crime is without merit. "There is no constitutional right to be arrested." Hoffa v. United States, supra.
Assignment of Error No. 3 is without merit.

ASSIGNMENTS OF ERROR NOS. 4 AND 5
In these two assignments of error, defendant asserts that the trial judge erred in admitting in evidence the statements made by defendant to Marsha Bannister after the commission of the crime. He avers that the failure to give him the Miranda warnings, the failure of the informer to identify herself as such, and her failure to prevent the crime by arresting him renders the statements inadmissible.
For the reasons given in disposing of Assignment of Error No. 3, these contentions are without merit. Defendant volunteered the statements to the informer at a time when he was not in custody. She was under no duty to disclose that she was an informer or to cause defendant to be arrested prior to the crime. *829 Defendant also asserts that the court erred in admitting the statements without a hearing as to voluntariness.
In this Court, he argues that the court erred in not holding an evidentiary hearing out of the presence of the jury to determine voluntariness. In making objection at the trial, defense counsel specified two bases for the hearing: the failure of the informer to identify herself and the failure of the informer to advise defendant of his rights at the time of the conversation. [Tr. 174.] The defendant relies upon Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 ALR3rd 1205 (1964).
In Jackson v. Denno, supra, the United States Supreme Court held that it was a denial of due process to assign the determination of the voluntariness of a confession to the jury that adjudges guilt.
In the present case, the record reflects that the trial judge entertained defendant's objection that the statements were involuntary and inadmissible out of the presence of the jury. As we have noted, defense counsel asserted that the absence of Miranda warnings and the failure of the informer to disclose her identity rendered the statement involuntary and inadmissible. Accepting these assertions as factually correct, the trial judge overruled the objection and admitted the statements. The ruling was a determination that the grounds advanced for excluding the statements were without merit and, in effect, that the statements were voluntary.
We conclude that these assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 6
Here, defendant complains of the trial court's denial of his requested special charges to the jury numbers 2, 3, and 4.
Louisiana Code of Criminal Procedure Article 807 provides, in pertinent part:
"A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given."
Defendant's special requested charges numbers 2 and 3, respectively, read:
"A government or State cannot escape the application of the doctrine of entrapment, and then claim disassociation through ignorance of the activities of its agents or informants." [Number 2.]
"Even if a private citizen acts directly or indirectly on behalf of any police agency or prosecution official, he or she is considered to be a police agent, and any inducement or scheme designed to entrap an individual into the commission of an offense becomes suspect. This rule applies to an informer or undercover agent who poses as a private citizen." [Number 3.]
Both these instructions on entrapment are included in the judge's general charge. Hence, the trial court properly declined to give defendant's requested special charges numbers 2 and 3.
Defendant's requested special charge number 4 states:
"The testimony of an informer who provides evidence against a defendant for pay or for immunity from punishment, or for personal advantage or vindication, must be examined or weighted by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by interest or by prejudice against the defendant."
This charge singles out informers generally as a class whose testimony was suspect. As phrased, it was misleading. The trial judge covered interest and bias in his general charge as follows:
"You alone decide what weight you will give to the testimony of the various witnesses. If you believe that any witness has willfully or deliberately lied or testified falsely to any material facts for the purpose of deceiving you, you are justified in disregarding the entire testimony of such witness as proving nothing, as being unworthy of belief." (Tr. p. 322) *830 "You must carefully examine the testimony that has been given in this case, the circumstances under which each witness has testified and everything in evidence which tends to indicate whether a witness is worthy of belief. You may consider, among others that may come to your mind, each witnesses intelligence, his or her motive in giving the testimony, his or her demeanor while on that witness stand, any relationship which the witness may bear to either side in the case, the manner in which the witness may be affected by the verdict and the extent, if at all, to which the witness is either supported or contradicted by other evidence received in the case." (Tr. p. 328)
Assignment of Error No. 6 is without merit.

ASSIGNMENT OF ERROR NO. 7
In rebuttal closing argument, the prosecutor stated:
"If you come back guilty as charged, you will know that a man has been punished for committing a very serious offense and you will sleep a little better perhaps. At least a little safer knowing he's not lurking in the dark. On the other hand, if you put this animal back on the street this afternoon, lock your doors." [Vol. 3, p. 315.]
The defense objected and moved for a mistrial based on the prejudice created by the prosecutor's comments. LSA-C.Cr.P. art. 774. The court overruled the motion and admonished the jury to try the defendant only from evidence admitted at trial.
Before a verdict is set aside on the ground of improper argument, we must be convinced that the remarks influenced the jury and contributed to the verdict. State v. Western,La., 355 So.2d 1314 (1978).
In the circumstances here presented, we conclude that the remarks did not contribute to the verdict: the evidence of defendant's guilt was overwhelmingincluding his own admission of the misconduct charged; moreover, the judge admonished the jury to disregard the remarks of the prosecutor. See State v. Brown, La., 288 So.2d 339 (1974).
Assignment of Error No. 7 is without merit.

ASSIGNMENTS OF ERROR NOS. 8 AND 9
Defendant objects to the seventy-five year sentence imposed. He argues that he is entitled to this Court's review of the sentence on the following grounds: (1) that he was entitled to be informed of the basis of the sentence; (2) that he was entitled to an evidentiary hearing on the reasons for the sentence; and (3) that the sentence is unduly excessive.
The only reference to the sentencing procedure is in the minutes. The minutes reflect only that counsel objected to the imposition of a seventy-five year sentence. The sentence was imposed prior to the 1977 sentencing statute. See LSA-C.Cr.P. art. 894.1. Hence, the trial judge recorded no reasons for the sentence.
Louisiana Code of Criminal Procedure Article 877 provides that the pre-sentence investigation report utilized by the judge in imposing sentence is privileged. "Before imposing sentence the court may advise the defendant or his counsel of the factual contents and conclusions of any pre-sentence investigation report." LSA-C.Cr.P. art. 877. In State v. Underwood, La., 353 So.2d 1013 (1977), this court vacated the defendant's sentence due to the trial court's error in not allowing defense counsel access to the pre-sentence report and an opportunity to rebut a false statement in it. That holding is inapplicable to the present situation. In Underwood, there was proof that the pre-sentence report was materially and prejudicially false. Here, there is no such proof or allegation. Moreover, the record does not contain a request by the defense for the report. Absent such a request, we find no error. State v. Norris, La., 347 So.2d 225 (1977).
This Court has not held that it has the authority to review the excessiveness of *831 a defendant's sentence within the statutory limits, even when timely objection is made. See State v. Williams, La., 340 So.2d 1382 (1977), and cases cited therein. However, assuming that the court has such authority, there is no adequate showing that the trial court abused its discretion in sentencing the defendant in this case.
It is obvious from the facts stated earlier that the crime committed was especially flagrant and violent. The victim was seriously injured. After reviewing the pre-sentence investigation report, the trial court imposed a sentence well within statutory limits.
Assignments of Error Nos. 8 and 9 are without merit.
For the reasons assigned, the conviction and sentence are affirmed.