364 So.2d 978 (1978)
STATE of Louisiana
v.
James H. BOONE.
No. 61782.
Supreme Court of Louisiana.
November 13, 1978.
Rehearing Denied December 14, 1978.
*979 James A. Hobbs, Blackwell, Chambliss, Hobbs & Henry, West Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Brian E. Crawford, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
By an August 22, 1977 amended indictment, defendant James H. Boone was charged in two counts with arson with intent to defraud on September 11, 1975, and arson with intent to defraud on November 29, 1975, offenses reprobated by Article 53 of the Criminal Code. In a trial before a jury of six on August 22, 1977, defendant was found guilty on both counts. On the September offense he was sentenced to serve three years at hard labor, the sentence being suspended and defendant placed on probation for five years. On the November offense he was sentenced to imprisonment in the parish jail for five years. Four assignments of error are urged on this appeal for reversal of the conviction and sentence. In addition, defendant claims an error patent on the face of the record.
Assignment 1: Prior to the amended indictment upon which this prosecution is based, defendant was originally charged on November 23, 1976 jointly with Willie D. Allen in a four-count indictment. Count one charged simple arson on, or about, October 13, 1970. Count two charged arson with intent to defraud on June 2, 1974. Count three charged arson with intent to defraud on September 11, 1975. And count four charged arson with intent to defraud on November 29, 1975. The last two charges being the ones upon which this prosecution is based.
With the indictment in this posture, a December 20, 1976 defense motion for a bill of particulars was filed containing sixty-four requests for information. Only thirty-one of these requests pertain to the counts which were eventually prosecuted in this case, because count one charging simple arson was severed on May 5, 1977, and count two was also severed prior to trial.
Insofar as pertinent to the counts upon which this prosecution is based, the motion for particulars asked in connection with each count, whether the State contended that the damage to the buildings or structure mentioned in the amended indictments was caused by an explosion or fire. To these requests the prosecution answered, "The State is not required to reveal its evidence." Defense counsel then filed a motion to compel the State to furnish the information requested. At the hearing on this motion the State's attorney took the position that an answer to the defendant's request would require the State to disclose its physical evidence, which it was not compelled to do. Nevertheless, the prosecutor stipulated that the State had no objection to the appointment of an independent expert designated by the defense to examine the State's evidence under court supervision, in order that the defense could arrive at its own conclusions regarding which method was used to commit the crime involved.
While sustaining the prosecution's answer to the motion for bill of particulars, the trial judge approved the State's offer to permit the defense to examine the pertinent evidence in order that the defense could arrive at its independent conclusion as to which method was used to commit the alleged arson. Accordingly the trial judge fixed a time within which the defense should move to avail itself of the State's offer. In its brief the State asserts that the defense has never availed itself of the offer, and this is not denied.
*980 The charges involved set forth that James H. Boone did:
"On September 11, 1975, commit arson of property, a dwellinghouse and its contents at 21 Magnolia Drive, Monroe, Ouachita Parish, Louisiana, the property of Levi Redding with the intent to defraud State Farm Fire and Casualty Company of the sum of $51,288.09, contrary to the provisions of R.S. 14:53.
"On or about November 29, 1975, commit arson of property, a dwelling house and its contents located on Kendlewood Drive, West Monroe, Ouachita Parish, Louisiana, with the intent to defraud Aetna Fire Insurance Company and United States Fidelity and Guaranty Company of the sum of $250,000.00 contrary to the provisions of R.S. 14:53."
Article 53 of the Criminal Code defines the crime charged as follows: "Arson with intent to defraud is the setting fire to, or damaging by any explosive substance, any property, with intent to defraud."
Inasmuch as the crime may be committed by either of two methods, "by an explosive substance" or "by setting fire to," defendant contends he should be advised of the method the State intends to prove.
While ordinarily the State would be required to disclose which method was used to commit a crime, when the statutory definition of a crime sets forth two methods by which it may be committed, circumstances may alter such a requirement. This case presents such an exception. Here the State has offered the defense the opportunity to examine the physical evidence to be presented to the jury in order that defendant might draw his own conclusion as to how the fire was set. Under the State's offer, approved by the trial judge, if defendant had availed himself of this right to inspect and analyze the physical evidence, he would know as much about how the fire was set as the State knew. This being the case, no reversible error is shown. The State should not be compelled to bind itself to a conclusion concerning a scientific analysis which the jury may not accept. Such a matter falls within the jury's fact-finding prerogative. The State did all it should do when it made the evidence available to the defense in advance of trial. State v. Mason, 305 So.2d 523 (La.1974). This assignment is without merit.
Assignment 2: On December 23, 1976, when the indictment contained four counts, defendants Boone and Allen jointly filed a motion to quash the indictment based on the allegation that the crimes charged were not of the same or similar character, or based on the same act or transaction-connected together or constituting a common scheme or plan. Thereafter two counts of the indictment were severed, and the charge against Allen was deleted from this indictment.
At a time when the indictment had been amended to reduce the charges to three counts, and defendant Boone was still jointly charged with Allen, they filed a motion to sever. In that motion defendants simply alleged that if the State were allowed to proceed and prosecute them for all three offenses in one trial, they would be denied a fair determination of their guilt or innocence on each charge. Thereafter, prior to trial, another count of the indictment was severed, leaving the two charges upon which this prosecution proceeded. Also, as noted, the charge against Allen was dropped from this indictment.
To some extent, therefore, the motion to quash and the motion to sever were satisfied. Defendant, however, maintains that it was error for the trial judge to deny the motion to quash as to the remaining two charges for which he was convicted.
Considered together, the motion to quash and the motion to sever present the issue: Were these two offenses properly joined? Although no transcript of the hearing held prior to trial on these motions appears in the record, on the basis of the quoted articles of the Code and extracts of the evidence at the trial, the following conclusions can be drawn from the charges.
Article 493 of the Code of Criminal Procedure permits the joinder of offenses in these terms:

*981 "Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial."
These offenses are charged in the same indictment in separate counts for each offense. They are offenses of the same or similar character. Both involved the setting of fires to dwelling houses to defraud insurance companies. The offenses involved dwelling houses in rather close proximity  one in Monroe and the other in West Monroe in Ouachita Parish. Also, the offenses were closely related in point of time, having occurred about ten weeks apart. Finally, at defendant's election the offenses were tried by the same mode of trial, thus fulfilling the requirements for joinder set forth in Article 493.
These pretrial motions for severance on application of the defendant should not be granted unless "it is deemed appropriate to promote a fair determination of defendant's guilt or innocence of each offense." La.Code Crim.Pro. art. 495.1.
Aside from citing the pretrial severance standards set forth in State v. Carter, 352 So.2d 607 (La.1977), and a general statement to the effect that the trial judge fell into legal error when he refused to sever the offenses charged, the defense has not pointed out to this Court wherein severance "is deemed appropriate to promote a fair determination of defendant's guilt or innocence on each offense." An independent review of this record also fails to disclose wherein the determination of defendant's guilt or innocence on each offense has been prejudiced by the joinder. There is, therefore, no showing which would warrant a finding that the trial judge erred in denying severance.
Assignments 3 and 4: At the trial Levy Redden, whose residence at 21 Magnolia Drive in Monroe was burned, testified that he had pled guilty to arson with intent to defraud his insurer. He testified that he negotiated with defendant Boone and Willie D. Allen to have the house burned in order to collect the insurance, paying them ten percent of the amount to be recovered from the insurance company for the loss of the building.
According to Redden's testimony he owned two residences during February 1975, a rental dwelling in Farmerville and his residence on Magnolia Drive in Monroe. Both were insured against loss by fire.
Redden was in financial difficulties at the time and mentioned this fact to Allen. As a result of gentle persuasion by Allen, Redden agreed that Allen would burn the house in Farmerville. The Farmerville house was then occupied by tenants who would not vacate until the end of the school term in May.
Boone entered into the conspiracy to burn the Farmerville house during the month of June 1975, after the tenants vacated the house. An agreement was reached whereby Redden would pay Boone and Allen ten percent of the money collected from the insurance company when the house was destroyed by fire. Redden was required to pay $800 in advance, which he did by borrowing that amount from a bank in West Monroe. It was planned that Allen and Boone would burn the house during the month of June. However, the plan aborted because new tenants moved into the vacated house two days earlier than anticipated. Despite Redden's efforts, at Boone's suggestion, to have the tenants delay moving into the house in order that the burning could be accomplished, they were unwilling to cooperate. The plan to burn the house was therefore abandoned, for Redden refused to have it burned while it was occupied.
This development required a change of plans and, at Boone's suggestion, the conspiracy shifted to the burning of Redden's Magnolia Drive residence in Monroe. Because of the changed circumstances Redden was required to pay Boone an additional *982 $400. It was also understood that Redden would go on a vacation during the month of July and the house would be burned during his absence. In keeping with this revised scheme, Redden left a house key with Boone and he and his family traveled to Arkansas and Missouri on vacation. On his return five days later, the house had not been burned. Disappointed, Redden contacted Boone for an explanation.
Shortly thereafter Redden traveled to Florida with his family expecting the house to be burned on his return. From Florida he telephoned Boone to inquire if the house had been burned, at which time Boone explained that the man who was to do the job was in the hospital with a heart condition. Thereupon Redden returned to Monroe.
During the following month of August Redden purchased another house on Willow Drive in Monroe and moved there with his family on or about the first of September. Then, on September 11, 1975, while the Magnolia Drive house was vacant, the conspiracy was consummated and that house was burned.
Thereafter Boone contacted Redden and demanded an additional $400 which he said would be used to pay someone who had slowed the fire truck down so the house could burn. This payment was not made.
Redden then made a claim for the insurance, collected $51,000, $41,000 for the building and $10,000 for the contents, paid the mortgage on the house, sold the lot for an additional $10,000 and paid Boone $2,900, the balance due on $4,100 which was the ten percent agreed upon for burning the building.
During Redden's testimony, defense counsel objected to all evidence relating to the aborted plan to burn the Farmerville house. When the objections were denied and the evidence was admitted, he moved for a mistrial contending that this testimony was evidence of another crime committed by defendant which was inadmissible. To permit such testimony, he argued, was grounds for a mistrial under Article 770(2) of the Code of Criminal Procedure. Moreover, he reasoned, the testimony related to a prior offense which was inadmissible because defendant had not been notified in advance as required by the decision in State v. Prieur, 277 So.2d 126 (La.1973), that evidence of a prior offense would be presented.
The circumstances surrounding the burning of Redden's Farmerville house were incidents of an ongoing conspiracy to defraud the insurance companies who insured Redden's houses. When the Farmerville plan aborted, the identical conspiracy involving the identical conspirators was shifted to the Magnolia Drive house in Monroe with the identical ends in view. Money paid by Redden for the burning of the Farmerville house was to be applied to the burning of the Monroe house instead. And the initial agreement to pay Boone and Allen ten percent for burning the Farmerville house was to apply to the burning of the Monroe house. It was impossible, therefore, to prove the agreement to burn the Monroe house without mentioning the agreement entered into in connection with the Farmerville house.
Evidence of the Farmerville caper was necessary to explain the facts surrounding the commission of the offense in Monroe. As such it was relevant and admissible. La.Rev.Stat. 15:441. The fact that the events and circumstances leading to the commission of the offense forming essential elements of the crime charged occurred over a period of months does not, under the circumstances of this case, render evidence of the Farmerville conspiracy inadmissible or irrelevant; nor does that evidence, because of the time factor separating the chain of events, become a separate offense. All of these activities were integral parts of a single transaction. Facts and circumstances of illicit conduct do not always fall into neat, compact patterns.
For these reasons the trial judge properly admitted evidence of the Farmerville conspiracy. See State v. Kaufman, 331 So.2d 16 (La.1976), cert. denied, 429 U.S. 981, 97 S.Ct. 495, 50 L.Ed.2d 591; State v. Joseph, 341 So.2d 861 (La.1977).
*983 In addition to the assignments of error which have been found to be without merit, defendant argues in brief that error is discoverable by a mere inspection of the pleadings and proceedings, and for that reason should be considered by this Court on appeal under the authority of Article 920(2) of the Code of Criminal Procedure.
In stating in brief that the trial judge failed to afford defense counsel access to a presentence report and an opportunity to rebut any adverse information which may be contained in such a report, defense counsel does not designate any portion of the record which will support his assertion. His brief does state, however, that he requested a copy of the report in order that he might determine whether it contained adverse information which was false or unfounded and which could be rebutted.
To support his position defense counsel relies upon this Court's decision in State v. Underwood, 353 So.2d 1013 (La.1978), where the case was remanded to allow defense counsel to rebut adverse information in a presentence report. He concedes, however, that the Underwood case is distinguishable in that the presentence report in that case was shown to contain false information, whereas no such showing is made in the instant case. Nevertheless, defense counsel urges this Court to implement the Underwood decision by affording an opportunity to the defendant to view the presentence report to ascertain whether it contains false information detrimental to his case.
In the absence of a designation of that portion of the record which would establish that defense counsel made a timely request to view the presentence report which was denied, and in the absence of any showing whatever that the presentence report contained false information prejudicial to defendant, this Court's unanimous opinion in State v. Berain, 360 So.2d 822 (La.1978), is controlling. There Chief Justice Sanders wrote:
"Louisiana Code of Criminal Procedure Article 877 provides that the pre-sentence investigation report utilized by the judge in imposing sentence is privileged. `Before imposing sentence the court may advise the defendant or his counsel of the factual contents and conclusions of any pre-sentence investigation report.' LSA-C.Cr.P. art. 877. In State v. Underwood, La., 353 So.2d 1013 (1977), this Court vacated the defendant's sentence due to the trial court's error in not allowing defense counsel access to the pre-sentence report and an opportunity to rebut a false statement in it. That holding is inapplicable to the present situation. In Underwood, there was proof that the pre-sentence report was materially and prejudicially false. Here, there is no such proof or allegation. Moreover, the record does not contain a request by the defense for the report. Absent such a request, we find no error. State v. Norris, La., 347 So.2d 225 (1977)." See also La.Code Crim.Pro. arts. 875-76; La.Rev.Stat. 15:574.12.
For the reasons assigned, the conviction and sentence are affirmed.
TATE, Justice, concurring: I concur, but with reservations as to the rationale and result as to Assignment 2.
DENNIS, J., concurs and assigns reasons.
DENNIS, Justice, concurring.
The majority's reliance on La.R.S. 15:455 is misplaced. The "co-conspirator" exception to the hearsay rule, which is itself subject to criticism, see, Comment, The Coconspirator Exception to the Hearsay Rule, 37 La.L.Rev. 1101 (1977), does not provide a foundation for the introduction of evidence concerning a conspiracy to commit a crime not charged in the indictment.
Nevertheless, evidence of the Farmerville arson conspiracy was admissible in this case as part of the res gestae. Recent decisions of this Court have required a very close connexity between the crime charged and the crime sought to be introduced into evidence. State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Mitchell, 344 So.2d 1026 (La.1977). See also, The Work of the Louisiana Appellate Courts for the 1973-1974 Term  Evidence, 35 La.L.Rev. 525, 526-27 (1975):

*984 "In light of the purposes behind the Prieur guidelines, it is believed that for evidence of the other crime to qualify as res gestae under Prieur, the other crime must be so closely connected that the indictment or information as to the instant crime is deemed to carry with it notice as to the other crime as well."
This test is met in the present case. The conspiracy to burn the Farmerville residence was closely intertwined with the charged offense and the indictment must have put the defendant on notice that evidence of the Farmerville arson would be admitted.
I respectfully concur.