Conery, J., concurring in part and dissenting in part.
I join the majority in maintaining the defendant's conviction for attempted second *1085 degree murder and in vacating both the conviction for aggravated battery and the related sentence. I further concur in the reversal of the order of restitution. I dissent in part, however, as I find legal error as to the sentencing hearing. As explained below, I would also vacate the defendant's sentence for attempted second degree murder given due process considerations.
Following consideration of the entire transcript in this case, one has to ask, "Was defense counsel sufficiently diligent in his representation to insure his client's right to a fair sentencing hearing?" Or, "Was there a reason for the State to proceed with sentencing so quickly when there were many unanswered questions about the defendant's mental health?"
The majority opinion explains that the underlying incident happened on September 19, 2017. The trial, however, was held on February 20, 2018, only six months later, and the sentencing hearing was conducted on March 29, 2018, just 35 days after the trial. Even if the defendant's medical condition and mental health issues may not have been sufficient to excuse his crime, those medical records and expert medical testimony were not made available for sentencing purposes. Defense counsel did move to continue the sentencing as, apparently, he had not obtained any doctor's reports or mental health records by the day of sentencing. After the trial judge denied the Motion to Continue, the attorney was not in a position to proffer the evidence or give a meaningful explanation of how those records may have been relevant.
When the defendant's son and sister testified at the sentencing, each gave information about their non-medical knowledge of the defendant's long-standing mental health issues. The prosecutor then cross examined each of them, but not about his mental health issues, instead eliciting harmful hearsay testimony about their father's temper and anger problems, with no medical testimony, medical records or other expert testimony to explain or mitigate his past behavior. No objection was lodged.
Further, during cross examination of the defendant's son and sister, the prosecutor elicited extremely prejudicial other crimes evidence about alleged threats by the defendant against individuals whom he allegedly said he would "get even with" or words to that effect. Again, no objections were lodged.
It is significant that the trial judge used these very hearsay statements in his reasons for sentencing as one of the main factors for his sentence on the attempted second degree murder charge. The trial judge specifically noted that Mr. Ross showed "no remorse" and had threatened others with bodily harm.
Our jurisprudence would seem to preclude us from considering these issues on appeal as to Mr. Ross's conviction, as such issues are usually relegated to "post conviction proceedings" where a full record can be made as to the defense counsel's strategy, and evidence and expert testimony can be introduced. See La.Code Crim.P. art. 930 ; State v. Durall, 15-794 (La.App. 5 Cir. 5/12/16), 192 So.3d 285 ; State in the Interest of A.B. , 09-870 (La.App. 3 Cir. 12/9/09), 25 So.3d 1012.
The appellate record in this case, however, sufficiently demonstrates an error of law during sentencing. See La.Code Crim.P. art. 920. Specifically, the defendant was never given an opportunity by the trial judge to speak before sentencing. While the defendant was properly admonished by the trial judge not to speak while other witnesses were testifying, the defendant was never afforded an opportunity to speak after those witnesses testified. While it may be true that his attorney didn't call the defendant as a witness at the sentencing *1086 hearing, the defendant was not given an opportunity to speak by the trial court , as happens in almost every case before sentencing. The words "Do you have anything to say before sentencing?" were never pronounced. To the contrary, when the defendant tried to speak, the trial judge stopped him as follows:
BY MR. ROSS: Your Honor.
BY THE COURT: Mr. Ross, the hearing is over, sir. It's my turn.
BY MR. ROSS: (Indistinct).
BY THE COURT: Mr. Ross, Mr. Ross, you-you had your opportunity to speak, everyone's had their opportunity to speak, now I get - - now it's my turn.
BY MR. ROSS: I was told to be quiet.
BY THE COURT: Then do it....
While some trial errors by counsel can usually only be corrected in post conviction proceedings, I find that this otherwise conscientious and diligent trial judge did not afford Mr. Ross an opportunity to speak and perhaps rebut some of the extremely prejudicial and damaging information admitted during his sentencing hearing.
Louisiana Constitutional Article 1, § 2 provides "No person shall be deprived of life, liberty, or property, except by due process of law." The Louisiana Supreme Court in State v. Myles , 94-0217 (La. 6/3/94), 638 So.2d 218, 219 (per curiam), addressed a defendant's right of due process at sentencing hearings:
The sources of information relied upon by the sentencing court are varied and may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrest as well as conviction records. Williams v. New York , 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) ; State v. Washington , 414 So.2d 313 (La.1982) ; State v. Brown , 410 So.2d 1043 (La.1982). Because the scope of information available to the court for sentencing purposes is so broad, the defendant has a due process right to rebut prejudicially false or misleading information which may affect the sentencing determination. State v. Lockwood , 439 So.2d 394 (La.1983) ; State v. Parish , 429 So.2d 442 (La.1983) ; State v. Underwood , 353 So.2d 1013 (La.1978).
At the sentencing hearing defense counsel first called as a witness Ms. Beason, a long-time church friend of the defendant. In her testimony, Ms. Beason spoke of her knowledge of the defendant's kindness, specifically noting an instance where he helped a fellow church member monetarily during a hard time. She summed up her opinion of him by stating, "[H]e's a good person." The State then questioned Ms. Beason on her knowledge of the defendant's demeanor and narcotic use, to which she replied that she had never experienced the defendant being violent, and her only knowledge of narcotic use was of medication that had been prescribed to him. The State further questioned Ms. Beason on the defendant's mental health issues, to which she explained that she knew of his diagnosis of schizophrenia. Defense counsel offered no rebuttal.
Defense counsel then called Nila Painter, the defendant's sister, who testified that she believed her brother to be a good person and attested to his "generous character[.]" Ms. Painter also gave testimony as to the extent of her knowledge of the defendant's mental diagnosis and his back problems. On cross examination, the State questioned Ms. Painter on her knowledge of any statements or lists allegedly made by the defendant threatening others, and whether he expressed disappointment for not killing the victim. Ms. Painter testified, "yes, uh, I - - he may have, I don't... I can't - - I can't say for sure." The State further questioned Ms. Painter, "But you're aware that he's forming an idea while he's incarcerated to harm people *1087 when he gets out, is that correct?" To which Ms. Painter replied, "I think he has made that statement, yes." Again, defense counsel offered no objection and no rebuttal.
Lastly, Roy Ross, the defendant's son, testified to his knowledge of the defendant's mental diagnosis, back injury, and the medications prescribed in relation to both his mental disorders and his back pain. Further, Roy testified as to the defendant's previous counseling for temper related issues.
The State cross-examined Roy about his knowledge of any alleged threats or lists made by the defendant. Roy testified, "I didn't know there was a list[,] but he has made comments, but everybody makes comments when they're mad." Immediately following Roy's testimony, the trial court asked if there was anything else, to which defense counsel stated, "I don't have anything else."
However, at no point prior to sentencing did the trial court give the defendant the opportunity to speak or rebut any prejudicial information elicited by the State at the sentencing hearing. The only statements that were made by the defendant during the sentencing hearing were those directed to his son following Roy's testimony, and those made during the trial court's questioning of witnesses, when he was told he could not speak by the trial judge as noted earlier.
This court addressed this exact issue in State v. J.P.F. , 09-904 (La.App. 3 Cir. 3/3/10), 32 So.3d 1016, finding that the defendant's due process rights were violated when the defendant was not made aware of or given the opportunity to rebut prejudicial information used against him at sentencing. A panel of our court stated as follows:
The due process rights of a defendant do not stop at mere awareness of the information that will be used against the defendant in sentencing. Although a pre-sentence hearing is not required, the due process guarantee "requires that a defendant be given an opportunity to rebut false or invalid data of a substantial nature, to which the sentencing judge is exposed, where there is a reasonable probability that it may have contributed to the harshness of the sentence." Telsee , 388 So.2d at 750 (citing [State v.] Richardson , 377 So.2d 1029 [ (La. 1979) ] ; Bosworth , 360 So.2d 173 ; Underwood , 353 So.2d 1013 ) ).
....
It is true that "[i]n the absence of allegations of mistake or falsehood, evidence of uncharged offenses is admissible and is a valid factor for consideration in sentencing." State v. Rankin , 563 So.2d 420, 424 (La.App. 1 Cir.1990). Yet, the issue in this case is not whether the letter containing allegations of similar conduct is admissible or could be relied upon by the sentencing judge. It is whether J.P.F. had an opportunity to deny the allegations. Thus, J.P.F., because he had no notice of these allegations, was not given a chance to even assert mistake or falsehood.
J.P.F. did not offer any specific refutation of the allegations. Yet, it may have been not because they were true but because J.P.F. had no notice of those allegations, no knowledge of the details of those allegations, and, thus, no opportunity to deny, explain, rebut, or show that they were false. Based on this, not only did J.P.F. not have an opportunity to deny, explain, or rebut these allegations, he also did not have an opportunity to object to their admissibility based on mistake or falsehood. Therefore, the trial court's failure to allow J.P.F. an opportunity to deny, explain, or rebut the allegations of prior similar conduct also constitutes a violation of J.P.F.'s due process rights.
*1088 Id. at 1019-20. See also State v. Telsee , 388 So.2d 747 (La.1980) ; State v. Bosworth , 360 So.2d 173 (La.1978).
In light of the arguably improper hearsay evidence that was admitted during sentencing, albeit without his attorney's objection, and especially in light of the fact that the trial judge used that evidence as the major justification for his sentence and specifically prevented the defendant from speaking or otherwise contradicting that evidence, I find that there was a constitutional violation of the defendant's due process right to a fair sentencing hearing. I would reverse the defendant's sentence for attempted second degree murder and remand for resentencing in accordance with the law and this opinion.