LKOSTELKA, J.
In agreement for the dismissal of two counts of first degree murder, James Charles Boyette (“Boyette”) pled guilty to accessory after the fact to first degree murder, armed robbery and distribution of cocaine. He was thereafter sentenced to concurrent sentences of five years at hard labor, sixty years at hard labor without benefit of parole, probation or suspension of sentence, and fifteen years at hard labor on the respective convictions. He appeals the sixty-year armed robbery sentence as excessive and urges error in the trial court’s denial of his motion to withdraw his guilty pleas. We affirm.
*660 Facts
Boyette was originally charged with two counts of first degree murder in the deaths of Donald Ray Kendrix and Lee A. Bolton. On the second day of the murder trial, Boyette entered into a plea bargain agreement with the state. Under the terms of the agreement, both charges of first degree murder were dropped and Boyette was allowed to plead guilty to new charges of accessory after the fact to first degree murder, the armed robbery of Lee A. Bolton, and distribution of cocaine. As part of the plea bargain agreement, Boyette agreed to testify truthfully in the investigation and prosecution of a co-defendant for two counts of first degree murder. The state agreed to recommend a forty-year cap on the sentencing, and that all sentences run concurrent. Boyette also admitted to a pending probation violation. The trial court agreed to accept all of the conditions of the plea bargain agreement, except the proposed sentence cap which it considered as a recommendation only.
On January 5, 1999, Boyette, represented by different counsel than the one who represented him at the plea, filed a motion to withdraw his pleas of guilty. After hearings and testimony regarding the vol-untariness of the pleas, the motion to withdraw the guilty pleas was denied on August 17,1999.
|?On October 28, 1999, Boyette was sentenced on the three pled offenses. Additionally, his probation was revoked and the original sentence was reinstated to run concurrent with any other sentences.
A timely motion to reconsider sentence was filed on October 29, 1999. After denial of the motion, Boyette now appeals, complaining of the denial of his motion to withdraw his guilty pleas and the imposition of the sixty-year sentence without benefits for the armed robbery conviction.
Discussion

Excessive Sentence

Boyette’s sole complaint under assignments of error numbers one and two is the excessiveness of his sixty-year sentence. .Specifically, he argues that the trial court substantially exceeded the recommended sentence cap without justification and that some of the factors determined to be aggravating should not have been so considered. Boyette complains that very little was noted at sentencing regarding his pri- or criminal history or the state’s benefit-ting from the plea bargain agreement. He also asserts that no mention was made of the fact that he was a youthful offender who had only a ninth-grade education and had expressed remorse for what occurred.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Bradford, 29,519 (La.App.2d Cir.04/02/97), 691 So.2d 864. The articulation of the factual basis for a sentence is the goal of La. C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even |awhere there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); Bradford, supra.
Whether or not the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const, art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless *661 and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 365 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985).
There is no requirement that specific matters be given any particular weight. State v. Dunn, 30,767 (La.App.2d Cir.06/24/98), 715 So.2d 641.
Where a defendant has pled guilty to an offense which does not adequately describe his conduct, benefit received by plea bargain agreement and the attendant reduction in potential exposure to criminal penalty is a proper sentencing consideration. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991); State v. Anderson, 574 So.2d 468 (La.App. 2d Cir.1991).
In this case, we find more than adequate La.C.Cr.P. art. 894.1 compliance. Contrary to Boyette’s argument, the record shows that the trial court considered the defendant’s previous criminal history, heard testimony regarding how the state benefitted from the plea agreement, and considered his youth and expression of remorse. Coupled with these factors, the remaining considerations of the trial court show a more-than-adequate factual basis for the sentence imposed.
|4Nor can we find the sixty-year sentence to be constitutionally excessive. The crime of armed robbery, when Boy-ette entered his plea, carried a sentence at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64(B). Armed robbery is a serious offense which creates a highly explosive atmosphere in which victims, perpetrators, and bystanders may be injured or killed. State v. Jones, 28,929 (La.App.2d Cir.04/02/97), 691 So.2d 858; State v. Curry, 593 So.2d 860 (La.App. 2d Cir.1992).
Despite the state’s recommended ceiling cap, the trial court made it abundantly clear to Boyette that it was not bound by the forty-year sentencing-cap recommendation. It is well settled that the sentencing discretion of the trial judge cannot be limited by a sentence recommended by both the state and defendant. The trial judge may accept or reject a joint sentence recommendation. State v. Rios, 95-00961 (La.App. 3d Cir.03/06/96), 670 So.2d 708. Here, the court agreed only to impose the sentences concurrently. Accordingly, its rejection of the recommendation was within its discretion.
Moreover, Boyette was involved in an armed robbery in which the victim was killed, the most dangerous possible result of such a serious offense. The crime spree also involved a second murder. Clearly, Boyette pled guilty to several offenses which did not adequately describe his conduct and received a substantial benefit from the plea-he was originally facing the death sentence on two separate murder charges. Additionally, Boyette had a prior criminal history and was on probation when the armed robbery and murders were committed. The trial court undoubtedly found that he posed a substantial threat to society. We cannot disagree, considering the nature of the offense and that probation had obviously failed to deter Boyette’s criminal propensities. Considering these circumstances, we cannot find this mid-range sentence to be unduly harsh or ^excessive. See also State v. Smith, 433 So.2d 688 (La.1983), in which a sixty-year sentence was upheld where the defendant planned an armed robbery and physically abused his victims; State v. Berain, 360 So.2d 822 (La.1978), where a seventy-five-year sentence was affirmed when an armed robbery victim required two months’ hospitalization; State v. Williams, 341 So.2d 370 (La.1976), in which a sixty-year sentence was found not to be excessive even though the armed robbery of a restaurant was not accompanied by any *662 aggravating circumstances; State v. Parrish, 463 So.2d 794 (La.App. 2d Cir.1985), where a sixty-year sentence was not excessive for a recidivist even though it might require him “to be locked away for the rest of his life.”

Guilty Pleas

Boyette also argues that the trial court erred in denying his request to withdraw his pleas of guilty. He claims that the pressure and duress attendant to his giving of the guilty pleas rendered the pleas involuntary. Specifically, he contends he did not understand the ramifications of the court’s statement that it was not bound by the sentence recommendation or that he was exposed to a maximum sentence of ninety-nine years. He claims that he only “listened” to his attorney, the assistant district attorney and his sick mother, despite the fact that he did not desire to plead guilty to the offenses.
The record shows that Boyette entered the guilty pleas on July 28, 1997. His attorney reviewed the state’s plea agreement with him before the pleas were entered. The agreement provided that in exchange for the two murder charges being dropped, he would be allowed to plead guilty to new charges of accessory after the fact, distribution of cocaine and armed robbery, and would agree to probation revocation.
| r,Boyette’s attorney noted for the record that the state recommended a forty-year cap and that all sentences would run concurrent. Counsel also noted that the court agreed only to run the sentences concurrently and would order a pre-sentence investigation.
The trial court addressed Boyette, noted his young age, and asked if he talked with any of his family members and with his mother about the agreement, to which he answered in the affirmative. The trial court advised Boyette of his rights regarding the probation revocation and meticulously Boykinized him as to all three crimes to which he was pleading guilty. Particularly, the trial court informed him of the sentencing range for armed robbery, including the ninety-nine-year maximum sentence. Boyette indicated that he understood the sentencing range, and when asked by the trial court if there was anything about the penalty or charge he didn’t understand, he responded, “No, ma'am.”
When examining Boyette, the trial court asked specific questions as to his capacity to read a menu, a newspaper and a letter. Boyette stated that although he might have to go over a letter two or three times, he could nevertheless understand it. The court also inquired regarding his ability to add and subtract well enough to keep a checkbook. Boyette indicated his ability to perform that task. Boyette denied having any mental, physical or substance abuse problems.
Boyette stated that he had fully discussed his case and the plea agreement with his attorney, that he had had enough time for such discussions and was satisfied with his attorney’s advice. The trial court specifically asked Boyette if he had any further questions or matters which he had not been able to fully address with his attorney. Boyette responded, “No, Ma'am,” to that question.
When asked by the trial court if any promises or inducements were made to get him to plead guilty, the following colloquy transpired:
1?Q. That was the only thing that was promised to you?
A. Yes, ma’am.
Q. I want to make sure you understand that I’ve not committed to any amount of the sentence. I’m going to order a pre-sentence and make up my mind at that point. Do you understand that?
A. Yes, ma’am.
Q. So you understand that I’ve not agreed to forty years. The only thing I’ve agreed to is that whatev *663 er I sentence you to will all be run together.
A. Yes, ma’am.
Q. You understand that?
A. Yes, ma’am.
Q. Ha[s] Mr. Culpepper explained that to you?
A. Yes, ma’am.
Q. Were any threats or pressure made to get you to plead guilty?
A. No, ma’am.
Q. Is your decision to plead guilty freely and voluntarily given?
A. Yes, ma’am.
Boyette again stated that he understood the district attorney had made a recommendation and the trial court made no commitment to follow it.
Boyette’s attorney confirmed his discussion with Boyette of the terms of the plea and case termination and his belief that Boyette understood the possible penalty and the rights he was giving up.
Later, when represented by different counsel, Boyette filed a motion to withdraw his guilty pleas. Boyette’s attorney at the time of the pleas testified at the hearing held on August 17, 1999. He stated that before Boyette’s trial on the two first degree murder charges, he discussed a possible plea bargain with the state wherein the defendant would receive a life sentence and avoid the death penalty. The attorney further testified that after trial began and a jury was selected, the state found a previously unavailable juvenile witness. The witness’s statement was not only unfavorable to Boyette but indicated a greater amount of participation by him in the crimes than Boyette had admitted.
The attorney spoke with Boyette about these concerns and the plea bargain offer at issue and also had Boyette’s mother and the district attorney talk with him. Boy-ette was also allowed to talk with his mother outside the presence of the | «attorneys. It was explained to Boyette that the only favorable testimony at trial would be his own, and he was reminded not only that his prior statement to the sheriff was unfavorable but efforts to suppress it were unsuccessful. Based upon that statement, Boyette was informed that at minimum he faced a possible second degree murder conviction. Both the risks involved in going to trial on the two first degree murder charges, as well as the possibility of the death penalty, were explained to Boyette. These discussions lasted about two or three hours to give Boyette time to decide whether or not to take the plea bargain offer of which he now complains.
The attorney denied ever telling Boy-ette’s mother to talk him into accepting the plea bargain agreement or that he detected any pressure in the conversations between the district attorney and the defendant. The attorney stated that he represented Boyette for approximately six months, felt that he understood what was discussed regarding the plea bargain agreement, and that Boyette was capable of assisting in the preparation of his case. In fact, he noted that Boyette had written letters to him.
The assistant district attorney who prosecuted Boyette’s case testified that she informed Boyette, in the presence of his attorney, of the substance of the newly-acquired statement of the juvenile, as well as the physical evidence and other incriminating testimony that would be offered at trial. That assistant district attorney felt that Boyette understood his potential sentencing exposure of ninety-nine years, even in the final plea negotiation.
Boyette testified that he did not want to accept the plea bargain agreement and that his mother was sick and crying when she told him it was best for him to accept it. He felt pressured by the district attorney and was scared of being sentenced to life in prison. He did not understand the terms of the plea bargain agreement and did not realize the possibility of a ninety-nine-year sentence. In his | testimony, Boyette admitted to hearing the judge tell *664 him that the forty-year sentencing cap was only a recommendation, but he asserted that he did not fully understand what the judge meant by “not being bound” by the recommendation.
After hearing all of the testimony, the trial court denied the motion to withdraw the guilty pleas, noting that Boyette was facing a possible death penalty and had a certified capital attorney who negotiated on his behalf. The trial court found no evidence of threats, pressure or undue influence in the plea bargain process and determined that Boyette made the pleas knowingly, freely, and voluntarily.
Of course, it is well established that the entry of a guilty plea must be a free and voluntary choice. For a plea to be considered free and voluntary, the transcript must establish that the defendant was informed of, and waived his rights to, trial by jury, to confront his accusers, and of his privilege against self-incrimination. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State v. Nuccio, 454 So.2d 93 (La.1984).
La.C.Cr.P. art. 559(A) provides that the court may permit a plea of guilty to be withdrawn at any time before sentence. The withdrawal of a guilty plea before sentencing is discretionary with the trial court and is subject to reversal only if that discretion is abused or arbitrarily exercised. La.C.Cr.P. art. 559(A); State v. Essex, 618 So.2d 574 (La.App. 2d Cir.1993); State v. Nicholas, 30,104 (La.App.2d Cir.12/10/97), 704 So.2d 930.
It is clear from a review of the guilty plea colloquy and the transcript of the hearing on Boyette’s motion to withdraw his pleas that the trial court did not abuse its broad discretion in refusing to allow Boyette to withdraw his guilty pleas. The record reflects proper Boykinization on all three offenses. Boyette was carefully, thoroughly and meticulously questioned regarding his capacity to understand the proceedings, charges, sentence exposure, and the voluntariness of his pleas of |1f)guilty. The trial court’s use of simple words and examples showed its particular consideration of Boyette’s young age, limited education and emotional state. Boy-ette’s complaint that he did not understand the meaning of the trial court “not being bound” by the forty-year sentencing cap or that his maximum sentencing exposure was ninety-nine years is contradicted by both his actions and statements on the record. It is clear that the sentencing discretion of a trial judge cannot be limited by sentencing recommendations made jointly or otherwise. State v. Butler, 98-1258 (La.App. 3d Cir.02/03/99), 734 So.2d 680. See also State v. Barnes, 596 So.2d 302 (La.App. 3d Cir.1992). Moreover, Boyette was not entitled to withdraw his guilty pleas upon learning that the trial court’s sentence would be harsher than he expected, absent an indication of a breached plea bargain or negotiation which might have led him reasonably to believe his plea would result in a lesser sentence. State v. Clark, 414 So.2d 369 (La.1982). Here, the record is clear as to the terms of the agreement, the court’s position on the sentencing cap, and Boyette’s understanding of these facts. In denying Boyette’s motion to withdraw his guilty pleas, the trial court more than adequately considered all relevant factors, and its decision was neither arbitrary nor an abuse of discretion. Accordingly, this assignment of error is without merit.
Conclusion
For the above-expressed reasons, Boy-ette’s convictions and sentences are affirmed.
AFFIRMED.