I,GASKINS, J.
The defendant, Ricky Sewell, was convicted by a jury of five counts of distribution of cocaine. He was sentenced to serve five years at hard labor without benefit of parole, probation, or suspension of sentence for each count. The sentences for the first three counts were ordered to be served consecutively. The sentences for the fourth and fifth counts were ordered to be served concurrently with the sentences for the first three counts. The defendant appeals, claiming insufficiency of the evidence against him and that the sentences imposed are excessive. For the following reasons, we affirm the convictions and sentences.
FACTS
Police received information about drug trafficking in Monroe, Louisiana, and began an undercover investigation targeting the defendant. Detective David May coordinated the investigation. Officers Jay Ri-gal and Nikki Johnson of the West Monroe Police Department worked undercover.
*1289 On January 9, 2001, Rigal was supplied with $100 of prerecorded money and an audio transmitter. May showed Rigal a photograph of the defendant from the Automatic Fingerprint Identification System (AFIS). Rigal and an informant drove to 203 North 11th Street where they met the defendant. May and other officers remained a few blocks away. The defendant told Rigal to pull his car into the driveway. The defendant went inside the house and returned with five rocks of crack cocaine which Rigal purchased for $100. The transaction was completed through the car window. Rigal stated the defendant was approximately three feet away. This investigation was Rigal’s seventeenth undercover operation.
12Later that night, Rigal again viewed the defendant’s photograph and confirmed that it was the defendant who sold him drugs. Rigal submitted the drugs as evidence. The audio system failed to record the transaction.
On January 11, 2001, Johnson was given prerecorded money and an audio transmitter. She was instructed to target the defendant or another specified individual. May showed Johnson the photograph of the defendant before she and the informant drove to the house at 203 North 11th Street. The informant knocked on the door and entered the house. The defendant then came to the door and waved for Johnson to enter. Johnson went inside the house, leaving the audio transmitter in the vehicle. She purchased five crack cocaine rocks from the defendant for $100. Johnson identified the man in the photograph as the defendant who sold her drugs and she submitted the drugs as evidence.
On January 24, 2001, Johnson went to the same location to make a drug purchase. She was approached by several people who offered to sell her drugs. She saw the defendant exiting a residence across the street and chose to buy drugs only from the defendant. Johnson bought six crack rocks from the defendant for $100.
On January 25, 2001, Johnson observed the defendant unloading a white pick-up truck in the vicinity of the previous purchases. She bought another six crack rocks from the defendant for $100.
Johnson made a final purchase of six crack rocks from the defendant on January 31, 2001, for $100. The defendant gave Johnson his cell phone number. The last three transactions were recorded by audio monitoring and |3those tapes were played in court. Johnson testified the man who sold her the crack cocaine answered to the name “Ricky.”
A forensic chemist verified that all five purchases submitted as evidence were crack cocaine. An arrest warrant was issued for the defendant on March 23, 2001. The defendant was interviewed at the police department, advised of the arrest warrant, and released when he agreed to reveal his suppliers and assist in the investigation. The defendant failed to cooperate and was arrested on April 22, 2001.
At trial, May, Rigal, and Johnson testified. Both Rigal and Johnson identified the defendant in court as the person who sold them crack cocaine.
The defendant took the stand in his own defense. He testified that at the time of the offense, he lived at 203 North 11th Street with his grandmother, his girlfriend, a nephew, and two male boarders. He attacked the validity of the officers’ identification of him, arguing that other men who looked similar to him lived at the residence. The defendant claimed that he and his nephew are approximately the same height.
The defendant stated that he had never met Rigal or Johnson, never owned or *1290 used a white pick-up truck, never had a cell phone with the number stated by Johnson, and that the officers’ testimony was untrue. He stated that when he was initially interviewed, May told him that “he had warrants” for him and that “he wanted me to tell on someone else about a drug deal. And so I told him that if I find out something about it or say something, you know I heard something about it, that I will make him aware 14of what he wanted to know.” He testified that he was photographed at the interview.
The defendant’s girlfriend, Martha Quarles, testified she had never seen the defendant distribute cocaine; however, she admitted that she had a conviction for distribution of crack cocaine. She stated she had never talked to police about the defendant selling crack cocaine or told police that he had no legitimate means of income. Officer Thomas Rhodes testified on rebuttal that Quarles told him the defendant had no legitimate means of income in December 2002.
The defendant was convicted of all five counts of distribution of cocaine. On February 27, 2004, he was sentenced to five years at hard labor without benefit of parole, probation, or suspension of sentence for each count. The first three counts were ordered to be served consecutively. The fourth and fifth counts were ordered to be served concurrently with the sentences for the first three counts. A motion to “amend or modify sentence pursuant to La. C. Cr. P. article 822” was filed and denied. No motion for post verdict judgment of acquittal was filed. The defendant appealed his convictions and sentences.
SUFFICIENCY OF THE EVIDENCE
The defendant argues that the evidence adduced at trial was not sufficient to support a verdict of guilty of the charges of distribution of cocaine. This argument is without merit.
Although a question of sufficiency of evidence is properly raised by a motion for post verdict judgment of acquittal, this court may consider | Bsufficiency arguments in the absence of such a motion. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273. The proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
This court’s authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson, swpra, and does not extend to credibility determinations made by the trier of fact. La. Const, art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a judge or jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 2002-3090 (La.11/14/03), 858 So.2d 422.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Butler, 37,226 (La.App.2d Cir.6/25/03), 850 So.2d 932. The testimony of a single undercover police officer is sufficient to convict one charged with the distribution of a controlled dangerous sub *1291 stance. State v. Kelley, 36,602 (La.App.2d Cir.1/29/03), 836 So.2d 1243.
|6In cases involving a defendant’s claim that he was not the person who committed the crime, the prosecution must prove beyond reasonable doubt that the defendant is the individual who committed the offense. Jackson v. Virginia, supra; State v. Edwards, 1997-1797 (La.7/2/99), 750 So.2d 893.
The defendant contends that his identification by the two police officers was “highly suspect and borders on a farce.” He states that the officers had “never seen the perpetrator before,” that the length of time for the transaction was extremely short, and the confidential informant failed to testify. He argues that the use of audio instead of video surveillance was inadequate to support the conviction. The defendant maintains that without a voice analysis, there is no proof that the voice heard on the audio tape was his. The defendant points out that, even though the alleged offenses occurred in January 2001, a warrant for his arrest was not obtained until March 23, 2001.
At that time, the defendant contends that he was only asked “if he would work in conjunction with the police department as a confidential informant.” According to the defendant, when he was arrested in April 2001, no prerecorded money, drug paraphernalia, or drugs were found in his possession.
The evidence presented is sufficient to support the defendant’s conviction on five counts of distribution of crack cocaine. The jury found credible the identification by the two police officers of the defendant as the man who sold them crack cocaine. That testimony showed the defendant distributed cocaine with guilty knowledge of the drugs at the time of | ^transfer. The officers dealt with the defendant in close proximity. Johnson made drug purchases from the defendant on four occasions and testified that the defendant answered to the name, “Ricky.” With the forensic chemist’s confirmation that the substances sold were crack cocaine, the testimony was sufficient to prove the necessary elements. The confidential informant never handled money or drugs during the transactions so his testimony was unnecessary.
While video surveillance may be a fairly common practice, May, Rigal, and Johnson testified it was not standard procedure or used in the majority of drug investigations.
The defendant’s argument that no prerecorded money or drugs were found on him at the time of arrest does little to advance his case. May testified that in an investigation such as this one (as opposed to a buy-and-arrest operation) prerecorded money is rarely recovered. Further, several months elapsed between the purchases and the time the arrest warrant was obtained due to attempts by law enforcement officials to secure the defendant’s cooperation in apprehending larger drug suppliers. These factors explain the delay between the drug transactions and the defendant’s arrest and the resultant failure to recover any of the prerecorded money.
In this matter, the jury chose to believe the law enforcement officers and not the defendant or his girlfriend. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the state proved, beyond a reasonable doubt, the essential elements necessary to convict the defendant of five counts of cocaine distribution.
IsEXCESSIVE SENTENCES
The defendant has advanced several assignments of error contending that the sentences imposed in this matter were excessive. He argues that the trial court failed to particularize the sentences, violat *1292 ing the guidelines of La. C. Cr. P. art. 894.1. He also contends that the trial court erred in denying his motion to amend or modify sentences. Finally, the defendant maintains that the trial court erred in failing to articulate particular justification for imposing consecutive sentences rather than concurrent sentences. These arguments are without merit.
The test imposed by the reviewing court in determining the exces-siveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance .with its provisions. There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, writ denied, 2000-1467 (La.2/2/01), 783 So.2d 385. Important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and [ 9the likelihood of rehabilitation. State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Bradford, supra. A trial court has broad discretion to sentence within the statutory limits, and a reviewing court may not set sentences aside absent a showing of manifest abuse of that discretion. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158.
The defendant argues the court failed to meet the requirements of La. C. Cr. P. art. 894.1 when it gave limited reasons for the sentences imposed. The defendant contends that the trial court failed to consider the impact the sentences will have on his four-year-old son and his 90-year-old grandmother whom he takes care of.
To the contrary, the record shows that the trial court considered the factors enumerated in La. C. Cr. P. art. 894.1. Prior to imposing sentence, the trial court reviewed a presentence investigation (PSI) report as well as a letter submitted by the defendant. The court noted that the defendant was 48 years old with limited education and employment opportunities. The Imcourt also considered in mitigation that the defendant had a four-year-old child and a 90-year-old grandmother. The court considered that the defendant had lost a friend, his mother, and his sister at a young age and was raised by his grandmother.
The court found that the defendant had a lengthy criminal history and that the defendant admitted that he had a juvenile record. As an adult, the defendant had convictions beginning in 1975, including interfering with a police officer; two separate counts of aggravated battery; possession of marijuana; aggravated assault, which was reduced from at *1293 tempted murder; three separate counts of simple battery; obtaining controlled dangerous substances by fraud; receiving stolen property valued at less than $100; possession of cocaine with intent to distribute; and nonsupport of children.
After the offenses in the present case, the defendant was charged with possession of cocaine, illegal possession of a weapon by a convicted felon, distribution of cocaine, conspiracy to distribute cocaine, and possession with intent to distribute cocaine.
The defendant incorrectly argues that the trial court erred in considering his arrests in imposing the sentences in this case. The jurisprudence of this state holds that, in determining an appropriate sentence, a trial judge is not limited to considering only a defendant’s prior convictions, but may review all criminal activity. Moreover, a trial judge may consider a defendant’s attitude and criminal propensities. As a general rule, a trial court has wide discretion to sentence within statutory limits. In the absence of allegations of mistake or falsehood, evidence of uncharged | ^offenses is a valid consideration in sentencing. State v. Davis, 39,070 (La.App.2d Cir.10/27/04), 886 So.2d 617; State v. Grant, 39,102 (La.App.2d Cir.12/15/04), 890 So.2d 689.
The trial court found that the defendant was in need of correctional treatment best provided by incarceration, he was likely to commit another crime if placed on probation, and a lesser sentence than that imposed in this case would deprecate the seriousness of the offense. The record in this case shows that the trial court adequately considered the sentencing guidelines of La. C. Cr. P. art. 894.1 and sufficiently articulated for the record the factors considered in imposing the sentences.
On this record, we find no constitutional error. For each conviction of distribution of cocaine, according to the law at the time of the offense, the defendant faced a sentencing exposure of imprisonment at hard labor for not less than five years nor more than 30 years, the first five years to be served without benefit of parole, probation, or suspension of sentence. In addition, he faced a fine of up to $50,000. La. R.S. 40:967(B)(4)(b). The trial court imposed the minimum sentence of incarceration for each of the five counts of distribution of cocaine and no fines were imposed. Further, the defendant was not charged as a habitual offender.
Additionally, we find no error in the court’s decision to order that the sentences for the first three counts of distribution of cocaine be served consecutively and the sentences for the other two counts be served concurrently. When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of | ^imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. La. C. Cr. P. art. 883. This court has held that separate, distinct drug transactions are not part of a common scheme or plan. See State v. Washington, 27,464 (La.App.2d Cir.11/8/95), 662 So.2d 875, writ denied, 96-0462 (La.5/3/96), 672 So.2d 696; State v. Miller, 561 So.2d 892 (La.App. 2d Cir. 1990), writ denied, 566 So.2d 983 (La.1990). In the present case, two different undercover officers made the five separate purchases of cocaine. None of the purchases occurred on the same day. Therefore, each was a separate transaction. The trial court acted properly in accor *1294 dance with his sentencing discretion under La. C. Cr. P. art. 883 in directing that some of the sentences be served consecutively and some be served concurrently.
The record reflects that in the past, the defendant has been given numerous opportunities to reform his behavior, but he has failed to do so. In light of the defendant’s extensive criminal history, the sentences imposed in this matter are far from excessive and are tailored to both the offender and the offenses. The trial court complied with La. C. Cr. P. art. 894.1 in articulating the factors considered in sentencing the defendant. The trial court did not err in denying the defendant’s motion to amend or modify the sentence. The trial court afforded some leniency in ordering the sentences for two of the five convictions to be served concurrently.
I CONCLUSION
For the reasons stated above, the convictions and sentences of the defendant, Ricky Sewell, for five counts of distribution of cocaine, are affirmed.
AFFIRMED.