# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-1258

**STATE OF LOUISIANA**

**VERSUS**

**CATRINA L. WALLACE**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, NO. 89648
HONORABLE J. CHRISTOPHER PETERS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**SHANNON J. GREMILLION
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of James T. Genovese, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**CONVICTIONS AFFIRMED; SENTENCES VACATED AND REMANDED FOR RESENTENCING.**

**James Edgar Boren**
**Attorney at Law**
**830 Main Street**
**Baton Rouge, LA 70802**
**(225) 387-5786**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    Catrina L. Wallace

**Rachel Jones Conner**
**Attorney At Law**
**4833 Conti Street, Suite 207**
**New Orleans, LA 70119**
**(504) 427-7038**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    Catrina L. Wallace

**J. Reed Walters**
**District Attorney - 28th Judicial District Court**
**P. O. Box 1940**
**Jena, LA 71342**
**(318) 992-8282**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**GREMILLION, Judge.**

On three separate occasions within a three-week period, Defendant sold a confidential informant one to three grams of cocaine. She was charged by a bill of information with three counts of distribution of a controlled dangerous substance, cocaine, a violation of La.R.S. 40:967(A). A jury convicted her on each count. Defendant was sentenced to serve five years at hard labor on each count, to run consecutively, with the first two years to be served without the benefit of parole, probation, or suspension of sentence, for a total of fifteen years imprisonment and three thousand dollars in fines plus court costs.

Defendant appeals and assigns as error: 1) The trial court erred when it denied her request to strike a potential juror for cause; and 2) The consecutive sentences, totaling fifteen years, are constitutionally excessive considering the circumstances of her case. For the following reasons, we affirm the convictions. However, we find merit in Defendant's contention that the imposed consecutive sentences are excessive, and we vacate the sentences, and we remand the matter to the trial court for resentencing.

**ASSIGNMENT OF ERROR NUMBER ONE**

Defendant argues that the trial court erred when it denied her challenge for cause when she sought to exclude a prospective juror who declared that he would hold it against Defendant if she did not testify. As a result of the trial court's refusal, Defendant was forced to use a peremptory challenge to excuse the juror, "thereby prejudicing her right to effective voir dire examination and selection of a fair and impartial jury." In *State v. Schmidt*, 99-1412, pp. 29-30 (La.App. 3 Cir. 7/26/00), 771 So.2d 131, 148, *writ denied*, 00-2950 (La. 9/28/01), 798 So.2d 105, *cert. denied*, 535 U.S. 905, 122 S.Ct. 1205 (2002), this court stated:

A criminal defendant has the fundamental right to have a jury determine whether he may be guilty or innocent; whether the state proved all elements of the crime beyond a reasonable doubt. La. Const. art. I, § 17; *State v. Lacoste,* 256 La. 697, 237 So.2d 871 (1970). Nevertheless, this fundamental right would become meaningless if not guided by the principle that the jury should be impartial in order to ensure that the criminal defendant receives a fair trial. This principle does not mean that a criminal defendant has the right to be tried by a particular type of jury or juror, but it simply means that it is essential that the jury be impartial and competent. *State v. McLean,* 211 La. 413, 30 So.2d 187 (1947); S*tate v. Lewis*, 98-904 (La.App. 3 Cir. 12/9/98); 724 So.2d 830, *writ denied*, 99-0438 (La.11/12/99); 749 So.2d 649. To ensure that the jury is competent and impartial, La. Const. art. I, § 17 provides safeguards, such as the defendant's "right to full voir dire examination of prospective jurors and to challenge jurors peremptorily."

The purpose of voir dire is to test the competency and impartiality of prospective jurors to determine whether they are fit to serve on the jury. Voir dire is designed to uncover information about the prospective jurors, which may be used as a basis for challenges for cause or exercise of peremptory challenges. *State v. Berry*, 95-1610 (La.App. 1 Cir. 11/8/96); 684 So.2d 439, *writ denied,* 97-0278 (La.10/10/97); 703 So.2d 603. When a defendant exposes the partiality of a juror, the juror may not be automatically excluded for cause. The state or the trial court may rehabilitate the juror by asking questions and obtaining answers demonstrating the juror's ability to decide the case impartially pursuant to law and evidence. Ultimately, the trial court has the power to determine whether or not a juror may be excused for cause. *State v. Turner*, 96-845 (La.App. 3 Cir. 3/5/97); 692 So.2d 612, *writ denied*, 97-2761 (La.2/20/98); 709 So.2d 773.

In *State v. Scott,* 04-1312, pp. 16-17 (La. 1/19/06), 921 So.2d 904, 921, *cert. denied*, 549 U.S. 858, 127 S.Ct. 137 (2006), *overruled on other grounds by State v. Dunn*, 07-878 (La. 1/25/08), 947 So.2d 658, the supreme court discussed the trial court's role in determining whether a prospective juror should be excused for cause from the jury panel, as follows:

A trial court is vested with broad discretion in ruling on challenges for cause, and its rulings will be reversed only when a review of the voir dire record as a whole reveals an abuse of discretion. *State v. Cross,* 93-1189, p. 7 (La.6/30/95), 658 So.2d 683, 686; *State v. Robertson,* 92-2660, p. 4 (La.1/14/94), 630 So.2d 1278, 1281. Prejudice is presumed when a challenge for cause is denied erroneously by a trial court and the defendant ultimately exhausts his peremptory challenges. *Robertson,* 92-2660 at p. 3, 630 So.2d at 1280; *State v. Ross,* 623 So.2d 643, 644 (La.1993). An erroneous

2

ruling depriving an accused of a peremptory challenge is a substantial violation of his constitutional and statutory rights and constitutes reversible error. *Cross*, 93-1189 at p. 6, 658 So.2d at 686; *State v. Bourque*, 622 So.2d 198, 225 (La.1993). "A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied." *State v. Jones*, 474 So.2d 919, 926 (La.1985). However, a trial court does not abuse its discretion when it refuses to excuse a prospective juror on the ground he is not impartial where, after further inquiry or instruction, the potential juror has demonstrated a willingness and ability to decide the case impartially according to the law and evidence. *Robertson*, 92-2660 at p. 4, 630 So.2d at 1281.

To prove there has been error warranting reversal of a conviction, defendant is only required to show: (1) the erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges. *Robertson*, 92-2660 at p. 3, 630 So.2d at 1281.

Louisiana Code of Criminal Procedure Article 797, in pertinent part, provides:

> The state or the defendant may challenge a juror for cause on the ground that:
>
> . . . .
>
> (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
>
> . . . .
>
> (4) The juror will not accept the law as given to him by the court[.]

A review of the record shows that Defendant used all of her twelve peremptory challenges, including one challenge used to exclude the prospective juror after she attempted to have him excused for cause.

During voir dire, the trial court questioned the venire panel prior to the panel being questioned by the State or Defendant. The trial court asked: "Because the State has its burden of proof, the defendant does not have to prove anything, which

3

means she does not have to testify or present any evidence if she should choose not to. Should she choose to elect to exercise this right, will any of you hold that against her." The prospective juror, Chad Estis, answered "Yes, sir." A little later, the State asked Mr. Estis about his response to the question of whether he would hold it against Defendant if she did not testify:

Q. And I'm not certain I understand, but I think I heard you say you would hold it against the defendant, if she didn't testify?

A. Yes, sir, I mean, I mean, it kind of goes back to my kids, you know. I mean if one of my kids was in the yard crying saying the other one done something to it, and the other one don't say nothing, guess who gets in trouble?

Q. Been there and done that. If the Judge tells you that the law is such that the constitution of this country and of this State, says that the defendant does not have to testify, can you apply that? Or would it be difficult for you?

A. I understand it's the law and everything, I mean, but everybody's got, you know, everybody's [sic] is their own person.

Q. I understand.

A. I mean, you can't make somebody think something (inaudible).

When it was Defendant's turn to question the prospective jurors, her counsel went immediately to Mr. Estis. The following conversation took place:

Q. Good morning, again to you all. Mr. Estis, you said that if a person does not get up and defend themselves that you, you'd hold that against them, is that correct?

A. I mean, if they're not going to defend themselves, they must be guilty. That's the way I think.

Q. Okay. Even, even if the, even if the State doesn't put on enough evidence, but just puts on a little evidence, but the defendant still doesn't get up and say anything, you still find them guilty?

A. Well, it just depends on the situation. I mean, it seems like a person would want to put their side of the story out there.

Q. You said it seems like the person would want to put their side of the story out there?

A. Yeah, yes, ma'am.

Q. And so, the Judge instructed you and also the D.A. has also mentioned and told you about a law that says that the defendant, the defendant does not have to testify, that that's their constitutional right. And although that is the law, it doesn't change your opinion about how you feel about that situation, does it?

A. Not really.

Q. You still would say if they do not testify, that you would hold that against them?

A. I guess it really depends on the circumstances and everything, I mean, but 90% of the time, I mean, you would think that if somebody's not going to say nothing, you know, they don't want to, I guess, incriminate theirselves [sic] (inaudible).

Q. You said it would depend on the circumstances. What kind of circumstances would it depend on?

A. I don't know.

Q. You don't know. It's all right if that's how you truly feel and that's what you're here for to tell the truth and be honest and that's what we want is the truth and to be honest about your true feelings. So no one is going to hold it against you if that's how you truly feel, regardless if they have a law or not and you feel like you don't like that law and you're still going to feel the same way, that's okay.

A. Yes, ma'am.

Q. That's what we're here for. And so that's what you're telling me, regardless of it they have a law, that's just how you feel. If they don't get up and testify, then you're going to hold it against them?

A. Yes, ma'am.

After defense counsel completed her examination of the prospective jurors,

the trial court spoke with Mr. Estis, as follows:

Q. Mr. Estis, I just have one question, one set of questions and I know you knew they were coming. You said earlier that you, and obviously it's human nature that we want to hear both sides of the story.

A. Yes, sir.

Q. And it's human nature, and I know how we may feel personally, if we were in that situation how we would react. You understand that

5

our constitution provides that a person doesn't have to testify, doesn't have to present any evidence if they don't want to?

A. Yes, sir.

Q. That's the whole idea of the State having to prove beyond a reasonable doubt. You understand that?

A. (No audible response).

Q. So, given—and the State bearing the burden of proof. Given that, if I instructed you in the final instructions, if you were selected as a juror, if I instructed you that that was the law, which it is, that, would you hold it against the defendant if she chose to exercise that right not to take the stand and not to present any evidence?

A. I mean, if they didn't have anything against her, I wouldn't.

Q. Okay. I was fixing to say, if they didn't, if the State didn't prove its case?

A. If they had nothing, I wouldn't, but if they had, you know, some pretty substantial stuff against her—

Q. But you understand the State has to prove beyond a reasonable doubt. If they don't reach that burden, then the case, then their case falls, you understand that?

A. Yes, sir.

Q. And so, and so, you could abide by that, by that standard if the State—now the State may have some evidence, may have, you know, but they don't have enough to reach the burden, the standard for you beyond a reasonable doubt, you could abide by that, right?

A. Yes, sir.

Defense counsel, the State, and the judge then retired to the judge's chambers. The trial court asked if there were any challenges for cause. Defense counsel challenged Mr. Estis for the reason he had stated that he would hold it against Defendant if she did not testify. She argued:

> MS. TODD: And we tried to rehabilitate him and asked him if they had a law against it, would he change his mind. And he said: No. Then he said it depended on the circumstances and I told him it's all right, just tell the truth. He still was adamant about, well, he felt like they should, they should speak if they did something wrong, and make

sure they didn't do anything wrong, they should speak. It was no rehabilitation for him.

> THE COURT: You didn't listen to me, did you? In any event, Mr. Walters?

> MR. WALTERS: I have to say, that's a close call, but I think he did sufficiently rehabilitate himself when you asked him the questions about, you understand that you can't hold that against her and, again, some evidence, that's what prompted me to ask that question. So, I think he's sufficiently rehabilitated. It's not like Mr. Ashworth and Mr. Boyette. I mean, they were pretty clear.

The question referred to by the State was as follows:

> I mean, it's not up to me. It's not up to the Judge. It's not up to Ms. Todd. It's up to you as an individual juror. You deliberate with your other, your fellow jurors, but y'all come to the conclusion, yes you have or you haven't. I mean, I may put one piece of evidence up there and if you say: I believe it, proof beyond a reasonable doubt. Conviction. But if I put one piece of evidence up there and you say: I may need a little bit more. And you vote "not guilty". So, it's the weight, it's the quality, it's, you know, that's your decision. Do you understand that?

Mr. Estis answered, "Yes, sir."

The trial court then ruled:

> Okay. I've had opportunity to review Mr. Estis' demeanor. I looked at him and I questioned him and I was concerned at his answers to your questions, Ms. Todd, and to some of your questions, Mr. Walters. But when I asked him point blank, what the deal is, I think the question ends up in his mind, not necessarily right against not self-incrimination or right not to testify, I think his concern is more of a burden of, of a burden, what, what the, what constituted reasonable doubt for him. I do believe he understood the law and I do believe he was rehabilitated and I'm going to disallow the challenge for cause.

As noted in *State v. Raymond,* 08-1204, p. 10 (La.App. 5 Cir. 4/28/09), 13 So.3d 577, 585, *writ denied*, 09-1205 (La. 2/5/10), 27 So.3d 296, the Louisiana Supreme Court "made it clear in *State v. Kang,* 02-2812, p. 8 (La. 10/21/03), 859 So.2d 649, 655, that courts of appeal are to give proper deference to the trial court's findings with respect to voir dire, and that a prospective juror's responses

7

during voir dire should be viewed as a whole, and not on a piece-meal basis."

Furthermore, in *Raymond,* the fifth circuit stated,

> An appellate court does not have the benefit of observing the potential jurors in person to assess the facial expressions and intonations in voice as they answer questions. Therefore, this court will not disturb such a decision by the trial judge unless a review of the voir dire as a whole indicates an abuse of discretion.

*Id.* at 584 (citations omitted).

In *Raymond*, the fifth circuit found that the trial court did not abuse its discretion when it denied a challenge for cause based on the prospective juror's response that he would hold it against the defendant if he did not testify. The defense's and the state's questions and the prospective juror's answers were in the same vein as the current case.

> When the prosecutor asked Mr. Terrio if he could put aside his normal human curiosity and not let that affect his decision, Mr. Terrio replied, "It's going to be on my mind. If I hear the evidence I'm going to take the evidence into consideration." The prosecutor again asked Mr. Terrio if he could accept the fact that the burden of proving the case was on the State. Mr. Terrio stated, "I can accept that's the way it's got to go but, I mean, like I said, if I'm, if I'm accused of a crime and I'm innocent I'm, I'm shouting to the top of this roof what I got [sic] to say." He continued, "That's, that's just human nature. Correct me if I'm wrong." The prosecutor explained that sometimes people don't take the stand because their lawyer tells them not to or there are other considerations not directly having to do with the case. Mr. Terrio stated, "Sure, I guess that's possible."

> The prosecutor then asked the prospective jurors whether any of them had a problem sitting in judgment on another human being, and Mr. Terrio responded negatively. He also indicated he would follow the court's instruction that the State had to prove each element of the crime. Afterwards, the following exchange occurred between the judge and Mr. Terrio:

> THE COURT:

> All right.

> Mr. Terrio, to spite your [sic], your inclination to want to hear what the defendant has to say, if I tell you he doesn't have to take the stand and that's the law, you're becoming a judge now, okay, you're the judge,

8

are you going to follow the law whether you agree with it or not?

MR. TERRIO:  Yes.

THE COURT:  Okay.  You're sure?

MR. TERRIO:  Yes.

Defense counsel subsequently challenged Mr. Terrio for cause, arguing that Mr. Terrio repeatedly told the court he could not follow the law regarding defendant's right not to testify. The prosecutor responded that Mr. Terrio, in response to a question from the trial judge at the end, said he could be fair. After a discussion, the trial judge denied the challenge for cause as to Mr. Terrio.

A charge of bias may be removed by the rehabilitation of the prospective juror. *State v. Chapman,* 410 So.2d 689, 695 (La.1981). A trial judge's refusal to excuse a prospective juror on the ground that he is not impartial is not an abuse of discretion where, on further inquiry or instruction, the juror has demonstrated the willingness and the ability to decide the case impartially according to the law and evidence. *State v. Welcome*, 458 So.2d 1235, 1241 (La.1983), *cert denied*, 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 152 (1985).

In the instant case, although Mr. Terrio initially said that he had a problem with defendant not testifying, on further inquiry, he demonstrated the willingness and ability to decide the case impartially according to the law and evidence. Therefore, we find that the trial court did not err by denying the challenge for cause of Mr. Terrio.

*Id*. at 586-87.

The trial court was correct when it surmised that Mr. Estis' reaction to the question of whether he would hold it against Defendant if she did not testify came from a confusion of what constituted beyond a reasonable doubt.  At one point, defense counsel asked:

Q. Okay. You also, you all have heard Mr. Walters as well as Judge Peters speak of burden of proof and they told you it's the State's burden of proof, beyond a reasonable doubt, to prove that my client did what they say that she did. They also told you that, I, we don't have to prove anything, it's all upon the State. So, if the State comes in and they prove, they bring some evidence, but not enough to prove beyond a reasonable doubt, what would your verdict be[?]

Mr. Estis asked, "I mean, what is 'some evidence, not enough'?" Defense counsel responded: "They being enough to say, okay, maybe she could have, but it's just, it wasn't enough to say beyond a reasonable doubt, she did it. It was a little sketchy." Mr. Estis then said, "[t]hat would be not guilty, I guess."

We cannot say the trial court abused its discretion when it denied Defendant's challenge of the prospective juror, Mr. Estis. The trial court had the benefit of observing Mr. Estis' demeanor during voir dire, and from the total voir dire it appeared Mr. Estis agreed that he could decide the case from the weight of the evidence the State presented without consideration of whether Defendant testified or not. We find no merit to this assignment of error.

## ASSIGNMENT OF ERROR NUMBER TWO

Defendant argues that her sentences totaling fifteen years of imprisonment are constitutionally excessive considering that she was a first time felony offender, a single mother of three boys, two with special needs, and was currently in school earning a degree to be a paralegal. She argues that the trial court took no consideration of any mitigating factors and that it was only the crime of distribution that "motivated the harsh sentence he meted out on this 30 year old[.]"

This court has articulated the following standard regarding the review of excessive sentence claims:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied,* 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing

> discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied,* 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling,* 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331. If we determine that a sentence should be set aside, we must remand to the trial court for resentencing. La.Code Crim.P. art. 883.

A person found guilty of the offense of distribution of a controlled dangerous substance, schedule II, is punishable by a sentence of "not less than two years nor more than thirty years, with the first two years of said sentence being without benefit of parole, probation or suspension of sentence; and may, in addition, be sentenced to pay a fine of not more than fifty thousand dollars." La.R.S. 40:967(B)(4)(b). Defendant was sentenced to five years on each count, to be served consecutively, for a total of fifteen years imprisonment, plus a fine of one thousand dollars on each count for a total fine of three thousand dollars.

Initially, we note that Defendant does not challenge the excessiveness of the individual five-year sentences but alleges that the consecutive sentences constitute excessiveness. Defendant argues that the trial court failed to adequately consider any mitigating factors as set forth in La.Code Crim.P. art. 894.1 when imposing consecutive sentences for a single course of conduct. Defendant further argues that the trial court "gave no particular justification to justify the departure from the Louisiana Supreme Court's preference for concurrent sentence where there is a single course of conduct[.]"

Defendant was convicted of selling one to three grams of cocaine on three separate dates over a three-week period for a total of five hundred dollars. Louisiana Code of Criminal Procedure Article 883, in pertinent part, provides that "[i]f the defendant is convicted of two or more offenses based on the same act or

11

transaction, or constituting parts of a common scheme or plan, the terms of the imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively."

While Defendant does not explain her theory of how her drug activity constituted a single course of conduct, she cites *State v. Underwood*, 353 So.2d 1013 (La.1977) and argues that in *Underwood*, "the Louisiana Supreme Court vacated as excessive a consecutive twenty-five year sentence for three counts of distribution of marijuana over two month period . . . where defendant had no prior criminal record and in the absence of a showing that the public safety required a longer sentence." In *Underwood*, however, the supreme court vacated the sentences not because the three sentences ordered to be served consecutively were excessive as such, but because "the consecutive sentences totaling twenty-five years appear on their face to be excessive, absent some further explanation not found in the record." *Id.* at 1019. The trial court had seemingly based the sentences on a "gross misinformation of constitutionally prejudicial magnitude contained in the pre-sentence report" that the defendant was a kingpin in the drug world. *Id.* The defendant was convicted of two counts of distribution of marijuana and one count of possession of marijuana. Each of these convictions had imposable maximum sentences of ten years. The supreme court stated:

> Here, the defendant, a businessman of settled family without previous criminal record, was convicted of selling marijuana to the same undercover agent on three occasions over a two-month period. The three offenses were joined in a single indictment and consolidated for trial. By almost any objective standard or accepted principle of sentencing, the consecutive sentences totaling twenty-five years are excessive, as all studies cited below show.
>
> Based on American theory and practice, concurrent rather than consecutive sentences are the usual rule, at least for a defendant without previous criminal record and in the absence of a showing that the public safety requires a longer sentence. Except for an offender who has been convicted prior to the present offenses, the concurrent

sentences should normally not exceed the maximum for the most serious offense tried. The national studies additionally indicate a usual range of sentence for a nondangerous first offender convicted of a nondangerous offense as not exceeding from five to ten years as a maximum, in the absence of exceptional circumstances (e. g., extended criminal activity which has nevertheless not heretofore resulted in a conviction).

*Id*. (footnote omitted).

In the current case, Defendant's total term of imprisonment is only one-half of the potential maximum sentence of thirty years she could have received on any one of the three convictions. Furthermore, in *State v. Young,* 05-795, p. 5 (La.App. 5 Cir. 3/14/06), 926 So.2d 652, 655-56 (footnote omitted), the fifth circuit stated:

> It has been held that multiple drug transactions occurring on different days are separate and distinct acts so as to render Article 883 inapplicable and to justify consecutive sentences, even when they involved the same undercover officer and the transaction occurs at the same location. Therefore, the trial court was not required to articulate particular justification for imposing consecutive sentences.

In the current case, at the sentencing hearing, the trial court noted that it had reviewed all the letters sent on Defendant's behalf and the presentence investigation report. The trial court stated that it was bound by the factors contained in La.Code Crim.P. art. 894.1 and noted that Defendant was a young mother and a first time felony offender who has been convicted of three very serious crimes. The trial court stated:

> It is no secret in our community that I view drug distribution as one of the vilest offenses in our criminal code. Your ability to make a living upon the selling of poisons to others in regard to, without regard to the dangers or complications to others is reprehensible and will not be tolerated. Additionally, the distribution of cocaine is the type of crime that is likely to re-occur if restrictions are not placed upon your activity. The lucrative nature of this activity makes one seem that this is easy money and an alternative to honest living. . . . I believe that if a suspended sentence were imposed in this matter, that the lure of the illicit sale of drugs would be too strong and you would likely engage in criminal activity again. Accordingly, I believe that a probated sentence would not be appropriate in the instant situation because there is an undue risk that you may commit the same offense or

13

another crime while being placed on probation. . . . I've viewed your demeanor throughout the trial and today, I'm reviewing your demeanor. I see a little bit of remorse today more so than I saw during the trial. But, I'm still wondering whether you're phased, or even phased by the seriousness, serious nature of this crime. . . . I understand the hardships that incarceration will impose, especially those that your children will suffer. However, I believe that justice requires a stringent sentence. I really wish you would have considered your children's future before you engaged in the conduct for which you are convicted.

Defendant argues an offender without a prior felony record should be sentenced to concurrent sentences rather than consecutive sentences. *See State v. Watson,* 372 So.2d 1205 (La.1979). In *State v. Hawkins*, 06-1599 (La.App. 3 Cir. 5/2/07), 956 So.2d 146, *writ denied*, 07-1156 (La. 12/7/07), 969 So.2d 627, this court noted that the supreme court favored concurrent sentences. The factors to consider when imposing consecutive sentences include defendant's criminal record, the severity or violent nature of the offenses, or the danger the defendant poses to the public. *See State v. Thomas*, 98-1144 (La. 10/9/98), 719 So.2d 49. Furthermore, while noting that particularly where the convictions arise out of the same course of conduct, in *State v. Brown,* 627 So.2d 192, 199-200 (La.App. 3 Cir. 1993), *writ denied*, 93-3101 (La. 3/18/94), 634 So.2d 850, this court stated that "in cases involving offenders without prior felony record, concurrent rather than consecutive sentence should be imposed[.]" *See also State v. Merritt*, 03-946 (La.App. 3 Cir. 3/17/04), 875 So.2d 80, *rev'd in part on other grounds on rehearing,* 03-946 (La.App. 3 Cir. 10/13/04), 884 So.2d 1283.

In *Young*, 926 So.2d 652, the defendant twice sold one hundred dollars' worth of cocaine in a drug-free zone and fifty dollars' worth on a third occasion, all within a one and one-half month period. He was sentenced to two twenty-five year terms of imprisonment and one ten-year term, to be served consecutively for a total of sixty years. He appealed, alleging that the sentences were excessive both

individually and consecutively. The fifth circuit agreed, noting that "[i]n reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes in this court and other courts[.]" *Id.* at 655. In discussing claims that consecutive sentences are constitutionally excessive, the fifth circuit reviewed the following cases:

> This Court has upheld a twenty-two-year sentence for a defendant who, in addition to a violation of LSA-R.S. 40:981.3, had one earlier felony drug conviction and had been previously arrested on eight prior occasions. He was charged with a total of seventeen offenses in these arrests, six of which involved firearms charges, three were for drug-related offenses (one of which resulted in the felony conviction mentioned above), five were for crimes against persons, and three for crimes against property. In that opinion, we noted that this Court has previously upheld sentences of fifteen years of imprisonment for commission of this offense where the defendants did not have a criminal history.

> This Court has also affirmed a defendant's two, fifteen-year consecutive sentences for two counts of distribution of cocaine, where the defendant sold cocaine to two different undercover agents on two separate occasions approximately one month apart. In upholding his consecutive sentences, we noted that defendant had a history of prior criminal activity. We have upheld a defendant's five, twenty-year consecutive sentences for five counts of distribution of cocaine. However, there the defendant had a criminal history of prior felony convictions for issuing worthless checks and simple robbery and also received a life sentence after being adjudicated a third felony offender. In comparison, another defendant received eighteen-year sentences on each of his five counts of distribution of cocaine, which were ordered to run concurrently. He had a history of dealing narcotics and was later found to be a second felony offender. In another case, we upheld a twenty-year enhanced sentence for distribution of cocaine in violation of LSA-R.S. 40:981.3 after the defendant was adjudicated a fourth felony offender. Finally, we affirmed a sixty-five-year enhanced sentence for a defendant found to be a third felony offender for distribution of cocaine in violation of LSA-R.S. 40:981.3.

> Looking to other appellate courts, a sentence of fifteen years in prison for distribution of cocaine has been affirmed by the Second Circuit in a case where a defendant was a fourth felony offender, with numerous prior arrests and convictions for drug-related offenses. The Second Circuit also found three concurrent twelve-year sentences constitutionally excessive where a thirty-six-year-old defendant made

15

three separate sales of cocaine on the same day to two undercover officers.

>  The Fourth Circuit has noted that twenty-year sentences for distribution of cocaine have been found to be excessive where the amount of cocaine involved is small.  In that case, the defendant was convicted of six counts of distribution of cocaine and sentenced to six consecutive terms of twenty years each.  In finding the cumulative sentence excessive, the court reviewed other cases involving more egregious defendants and concluded that the court abused its sentencing discretion.

*Id.* at 656-57 (footnotes omitted).

The fifth circuit then went on to vacate the defendant's sentences, stating:

>  After review, we find that Young received a much more severe penalty than more egregious offenders of the same offense. The consecutive nature of Young's sentences is constitutionally excessive considering that the record on appeal does not establish that Young is a large-scale drug dealer or that he has a history of selling drugs, and the quantity of drugs and the money involved in each transaction was small. The defendant was thirty-one years of age at the time of sentencing, and although the record alludes to prior criminal activity, the State did not establish such. These factors militate in favor of a lesser aggregate sentence than Young received.

*Id.* at 657.

Upon remand, in *State v. Young*, 07-1021 (La.App. 5 Cir. 3/25/08), 984 So.2d 144, *writ denied,* 08-938 (La. 11/21/08), 996 So.2d 1105, the defendant's sentences were ordered to be served concurrently for a total of eighteen years imprisonment.  In *State v. Wyatt,* 591 So.2d 761 (La.App. 2 Cir. 1991), the second circuit found three twelve-year sentences imposed concurrently to be excessive under circumstances similar to the current case.  The defendant in *Wyatt* was convicted of three counts of distribution of cocaine.  The second circuit noted:

>  Although defendant's past is hardly crime-free, his only previous *convictions* have been for driving while intoxicated.  While his history indicates arrests on a variety of charges, no disposition is indicated for any of them except the DWIs.  Excepting those DWIs, defendant's previous adult encounters with criminal activity were in 1978 and 1974, both over ten years prior to the instant offenses.  Even though he was adjudicated a juvenile delinquent in 1968, his background report indicates that he completed his probation and was

16

> discharged. In addition, the record shows that he satisfactorily completed his probation following his second DWI in 1986.
>
> . . . .
>
> Finally, we consider the circumstances giving rise to defendant's arrest. The defendant made three separate sales to two different undercover officers approximately five hours apart. Two of these transactions apparently occurred virtually contemporaneously and the third transaction was a return visit by one of those officers later that same morning.

*Id.* at 765. The second circuit recommended "that the maximum sentence which can be affirmed in the instant circumstances is ten years at hard labor." *Id*. at 764.

In brief, the State cites two cases which it claims supports its contention that the sentences imposed in the current case are not excessive, *State v. Davis*, 438 So.2d 1288 (La.App. 3 Cir. 1983), *writ denied*, 445 So.2d 455 (La.1984), and *State v. Sewell*, 39,380 (La.App. 2 Cir. 3/2/05), 894 So.2d 1286. The State asserts in its brief that in *Davis,* "a sentence of five (5) years at hard labor on one (1) count of distribution of cocaine was upheld along with sentences for two (2) counts of distribution of marijuana." However, though the sentences were ordered to be served consecutively, for a total of eleven years imprisonment, the record reflected that "[t]here was substantial evidence that marijuana was used regularly at defendant's home and that the defendant's home was being used to supply illegal drugs to various member of the community. The defendant was unemployed and the likelihood that he would commit another crime was great." *Davis,* 438 So.2d at 1291. In the current case, Defendant was employed at the time of the arrest at a health care facility and had been employed there for four years.

In *Sewell,* the defendant was convicted of five counts of distribution of cocaine and was sentenced to five years on each count with the first three sentences to be served consecutively and the remaining two sentences to be served concurrently, for a total of fifteen years imprisonment. The second circuit did not

17

find the sentences excessive; however, it did find that the defendant had an extensive criminal history, which included convictions for aggravated battery, possession of marijuana, aggravated assault—reduced from attempted second degree murder, two counts of simple battery, obtaining controlled dangerous substances by fraud, receiving stolen property, possession of cocaine with intent to distribute, and non-support of children. Furthermore, "[a]fter the offenses in the present case, the defendant was charged with possession of cocaine, illegal possession of a weapon by a convicted felon, distribution of cocaine, conspiracy to distribute cocaine, and possession with intent to distribute cocaine." *Sewell,* 894 So.2d at 1293. The second circuit agreed with the trial court that the defendant was in need of correctional treatment best provided by incarceration and that he was likely to commit another crime if placed on probation. In *Sewell,* our colleagues provide a textbook example of when consecutive sentences are appropriate. However, in the current case, Defendant is serving the same term of imprisonment as Sewell.

In *State v. Wagner*, 07-128 (La.App. 3 Cir. 11/5/08), 996 So.2d 1208, the defendant pled guilty to one count of possession with the intent to distribute cocaine. In exchange for his guilty plea, the state dismissed several ancillary charges. Moreover, while out on bond awaiting sentencing, the defendant committed two more drug offenses. The trial court sentenced the defendant to twelve years, with all but six suspended, to be served concurrently with a sentence previously imposed. In *State v. Langlinais,* 09-422 (La.App. 3 Cir. 12/16/09), 27 So.3d 1011, *writ denied*, 10-176 (La. 1/7/11), 52 So.3d 882, the defendant was charged with two counts of possession of controlled dangerous substances with intent to distribute and one count of possession of a firearm while in possession of the two drugs. In exchange for her guilty pleas to the two drug offenses, the state

dismissed the possession of a firearm offense. She was sentenced to five years on one count and ten years on the other count, to be served concurrently.

Considering the above jurisprudence, we note that almost without exception, in cases where small amounts of drugs were sold over a short periods of time, consecutive sentences were imposed on defendants who had prior, and in many cases, extensive criminal activity. Otherwise, the courts imposed concurrent sentences. In the current case, there was no indication that Defendant was involved in a large-scale drug operation, that she had a history of drugs offenses, or that she used drugs. There is no indication of a felony criminal history at all. Further, a more severe penalty was imposed on Defendant than more egregious violators of the same offense. Thus, we find that the imposition of three five-year sentences to be served consecutively to be constitutionally excessive. *See* La.Code Crim.P. art. 881.4.

## DECREE

Defendant's convictions are affirmed. However, the trial court abused its discretion when it imposed three five-year sentences to be served consecutively, resulting in constitutionally excessive sentences. We, therefore, vacate the sentences and remand to the trial court for resentencing with the instruction that the maximum consecutive sentence may not total more than ten years at hard labor with the first two years to be served without the benefit of parole, probation, or suspension of sentence.

**CONVICTIONS AFFIRMED; SENTENCES VACATED AND REMANDED FOR RESENTENCING.**